UNITED STATES of America,
Plaintiff–Appellee,

v.

Alfred Lee MAULDIN, Defendant–
Appellant.

No. 96–5270.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 4, 1997.

Decided April 3, 1997.

S. Delk Kennedy, Jr., Asst. U.S. Atty,
Office of the U.S. Attorney, Nashville, TN
(argued and briefed), for Plaintiff–Appellee.

Jude T. Lenahan, Federal Public Defend-
er's Office, Nashville, TN (argued and
briefed), for Defendant–Appellant.

Before: KENNEDY, NELSON, and
GODBOLD *, Circuit Judges.

---

* The Honorable John C. Godbold, Circuit Judge of
the United States Court of Appeals for the Elev-
enth Circuit, sitting by designation.

GODBOLD, Circuit Judge.

Defendant was convicted on three counts: (1) possession by a convicted felon of a firearm in violation of 18 U.S.C. § 922(g); (2) possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1); (3) knowingly using and carrying a firearm during and in relation to a drug trafficking crime as charged in Count Two, in violation of 18 U.S.C. § 924(c). We affirm.

## I. THE *TERRY* STOP OF MAULDIN'S CAR

The district court did not err in holding, after an evidentiary hearing, that officers had an articulable reasonable basis to suspect criminal activity that permitted them to make a *Terry* stop of Mauldin's car. Officer Lyles, of the Columbia, Tennessee Police Department, received a telephone call from an informant who told him that Mauldin was on Hill Street in a gold Jaguar and had a "bunch of dope" in a black pouch in the car. Lyles knew the informant and knew that in the past the informant had provided information to him and other officers leading to arrests, convictions or seizures of drugs. Lyles also knew Mauldin as a person from whom an undercover drug operative had made buys in the four or five months preceding.

Lyles relayed the information to Officer Goetz, who was assigned to the County Drug Task Force. Goetz also knew the informant and knew that he had provided useful information in the past. Goetz called Lyles back and told him that he had been to the Hill Street area and had not seen the gold Jaguar.

Shortly thereafter the same informant made a second call to Lyles and asked whether Mauldin had been stopped. On learning that he had not been stopped, he told Lyles to look for Mauldin on Bullock Street. Lyles relayed this to Goetz.

Hill Street, Bullock Street, and Second Street in Columbia are all in the same general area.

Goetz received a third communication regarding the gold Jaguar. This time Officer Miller contacted him to say that the gold Jaguar was on Second Street; he indicated that his source of information was the same confidential informant. Goetz went to Second Street and parked. From his knowledge of the area and the reports on the Jaguar's locations he waited at a place that he thought the car would pass, in the vicinity of a low income housing area that is a high drug traffic area. The Jaguar did show up. Goetz activated his blue lights and the Jaguar rolled to a stop, two males exited the back seat of the Jaguar and fled on foot. Goetz and his partner, Officer Denton, approached the car. Mauldin was under the wheel and a passenger was in the front beside him. Goetz, from the passenger side, saw his right hand on the steering wheel but could not see his left. He ordered Mauldin to bring up his left hand; Mauldin was making up and down motions with that hand. Goetz saw Mauldin make a "pitching motion" with his left arm, then his left hand came up free of any object. Then Mauldin's door came open, and he emerged from the car.

Mauldin contends that there were not grounds to make a *Terry* stop, so that everything found in the car after the stop should have been suppressed. We hold that the officers had a reasonable and objective basis for believing that Mauldin was engaged in criminal activity. Within a short span of time the officers had received three reports from an informant known by at least two of them to have previously supplied reliable and useful information concerning drug offenses. The three streets identified were in an area high in drug offenses. Mauldin was identified as an occupant of the car. He was known to have recently engaged in drug transactions in which he made sales to informants. The type of container for the "dope" was described. The manufacture of the automobile—a make that would not be regularly seen on the streets of Columbia, Tennessee— and its color, were identified. The suggested location of the car changed, but the place at which it finally was located was a place identified by the informant. This compendium of events was sufficient. It was not required, in order to make a valid *Terry* stop, that the informant must have precisely stated how he acquired the knowledge that he conveyed.

## II. RULE 404(b) EVIDENCE

■ The government was permitted to introduce Rule 404(b) evidence that previously Mauldin had made a sale of cocaine. The district court held that the evidence was offered for the purpose of proving specific intent. Mauldin was charged with a specific intent offense of possession of cocaine with intent to distribute. He contended that he did not commit the charged act. Because the government was obligated to prove that Mauldin possessed the cocaine and that he did so with the specific intent of distributing it, the evidence of a similar act of possession was admissible subject to the court's duty to weigh the probative value of the evidence against its prejudicial effect. *United States v. Johnson*, 27 F.3d 1186, 1191–93 (6th Cir. 1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 910, 130 L.Ed.2d 792 (1995). The court did weigh the evidence and found it was more probative than prejudicial. Both events occurred near the same location. The prior event was for the purchase of a substantial quantity of drugs, and the amount of money involved was inconsistent with acquisition for personal use and was more than a casual street user would pay.

Immediately after the testimony of the prior event the court gave a cautionary instruction to the jury, explaining that the testimony had been admitted for the limited purpose of considering the issue of intent to distribute cocaine as charged in the present case and that it was not to be considered as evidence of the character of Mauldin. The court reiterated that it should not be considered for any purpose other than intent to distribute. In instructions to the jury at the end of the trial the court reiterated that the prior offense testimony was not to be considered with respect to the character of the defendant nor to support a conclusion that because Mauldin committed an act in the past he committed the act for which he was presently on trial.

There was no error.

## III. EFFECT OF BAILEY V. UNITED STATES

■ In *Bailey v. United States*, —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995) the Supreme Court narrowed the meanings of "use" and "carry" of a firearm in relation to a drug trafficking offense, under 18 U.S.C. § 924(c)(1). The present conviction was pre-*Bailey*, but the *Bailey* holding applies. *Griffith v. Kentucky*, 479 U.S. 314, 321 n. 7, 107 S.Ct. 708, 712 n. 7, 93 L.Ed.2d 649 (1987). The government concedes that the jury instruction in this case was erroneous in the light of *Bailey*, for it merely utilized "use" and "carry" as self-defining terms.

We have reviewed the evidence and conclude that a properly instructed jury would have found Mauldin guilty of "carrying" the firearm. We do not need to address whether he was "using" it. In a similar case, *United States v. Riascos–Suarez*, 73 F.3d 616, 623 (6th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 136, 136 L.Ed.2d 84 (1996), this court held that the "carry" prong of *Bailey* was met by evidence that the gun was visibly placed in the driver's side of the console, within easy reach and immediately available for use. Like Mauldin, the defendant in *Riascos* was the driver. The car was pulled over, the officer approached and saw bundles of money scattered around on the floor. He asked Riascos to exit and, as he did so, the officer saw the handgun protruding from the driver's side of the console. This court found that the defendant would not be guilty of "using" because he was not actively employing the weapon. It defined "carrying" as requiring more than mere possession or storage and held those requirements were met because the weapon was in reach and immediately available for use. In this case not only was the weapon within reach and immediately available, Mauldin's actions indicated that he might raise his left hand and arm and shoot, and each of the officers, feared—and reasonably so—that was what he might do.

Mauldin contends that whether the gun was within reach and immediately available was a jury issue that precludes this court from holding that a properly instructed jury would have found that he was "carrying." We think not. The pistol was not underneath the seat or in the area of the accelerator and brake pedal or elsewhere in the car

and out of Mauldin's reach. It was photographed in its location, from which it had not been moved, and the photo discloses it on the driver's side, on the flat area of the floorboard where either one or both of Mauldin's feet would be located.

Except for Mauldin's own statement the evidence indicates that he placed the weapon where it was found. He was not seen to hold the pistol or even touch it. But, initially, he did not put either hand on the steering wheel when told to do so. Then, after urging, he placed his right hand on the wheel but not his left. He was seen by the officers to move his left hand and arm up and down in a "pitching motion." Upon further urging, at gunpoint, he raised his left hand, placed it on the wheel, and then exited the car. He brought his left hand up only after Officer Goetz, who was taking into custody the front seat passenger (who also had exited), directed his attention away from the passenger and to Mauldin because Mauldin was keeping his left hand down. Goetz tapped his weapon on the window and indicated to Mauldin to bring his left hand up, and Mauldin then did so.

Mauldin's contention is that the gun was "pitched" to its location by one of the occupants in the back seat. None of the three passengers was seen to "pitch" anything. Two bailed out before the car stopped, and the third fled when Goetz became involved in getting Mauldin to bring his left hand up into view. Mauldin's shift of blame to a "pitcher" is diminished by the fact that he also said the cocaine was pitched into the front seat by one of the back seat passengers, but one parcel of it was in a pocket of the left front door, a location to which it could not have been "pitched."

It is not disputed that the weapon was in the vehicle "in relation to" the charged drug offense.

The defendant relies upon *United States v. Moore*, 76 F.3d 111, 112 (6th Cir.1996). That case is distinguishable. There guns were found in the bedroom where defendant was sleeping and there was no transportation of the guns. In *United States v. Baker*, 78 F.3d 1241, 1247 (7th Cir.1996) the gun and cocaine were found underneath the driver's seat.

This court found that Baker did not "use" the gun as defined by *Bailey* but that a properly instructed jury would have found that he "carried" the gun, because it was transported and within reasonable reach.

*United States v. Spring*, 80 F.3d 1450 (10th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 385, 136 L.Ed.2d 302 (1996), also relied on by the defendant, is inapposite. There the firearm was in a gym bag inside a fanny pack in the back seat of the car driven by Spring. A co-defendant wore the fanny pack during the robberies.

Because the weapon was within Mauldin's reach and immediately available for use, a properly instructed jury would find him guilty of "carrying" the firearm. There was no error.

## IV. SENTENCE

On Count One (felon in possession of a firearm in violation of 18 U.S.C. § 922(g)), Mauldin received an enhanced sentence pursuant to the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1). It mandates a minimum fifteen year term of imprisonment in the case of a person who violates 18 U.S.C. § 922(g) and has three prior "serious drug or violent felony offenses," committed on occasions different from one another. Enhancement of Mauldin's sentence was based on three prior "serious drug offenses" under state law. To qualify for use in enhancement a prior drug offense must carry a term of imprisonment of ten years or more. 18 U.S.C. § 924(e)(2)(A)(ii).

■ Although the ACCA does not require the government to notify a defendant of its intent to seek enhancement, in this case, before sentencing, the government filed a notice listing three prior state drug convictions on which it planned to seek enhancement. One of the three offenses in the notice was listed as a state felony the maximum punishment for which was six years. At sentencing the government provided the court with an amended judgment indicating that the felony in question carried up to twelve years.

Mauldin contends that the government should be bound by its original notice. The government correctly points out that ACCA does not require notice prior to enhancement. See *United States v. Gregg,* 803 F.2d 568, 570 (10th Cir.1986), *cert. denied,* 480 U.S. 920, 107 S.Ct. 1379, 94 L.Ed.2d 693 (1987)(ACCA does not prescribe any specific method of alleging prior convictions in pursuit of enhancement); *accord United States v. Gibson,* 64 F.3d 617, 625 (11th Cir.1995), *cert. denied,* — U.S. ——, 116 S.Ct. 1580, 134 L.Ed.2d 678 (1996)(government's failure to formally notify a defendant of its intent to seek enhancement under the ACCA does not offend due process). Moreover, the district court found that Mauldin was aware of the government's reliance on his prior state drug convictions through the original and the subsequent filing of the amended judgment, which defense counsel received before sentencing. There was no error.

AFFIRMED.