*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 11a0133p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,

> *Plaintiff-Appellee,*

*v.*

DEMARCUS HARDY,

> *Defendant-Appellant.*

No. 08-5991

_____

Appeal from the United States District Court
for the Eastern District of Tennessee of Chattanooga.
No. 06-00139-001—Curtis L. Collier, Chief District Judge.

Argued: January 14, 2011

Decided and Filed: May 19, 2011

Before: SUHRHEINRICH, COLE, and COOK, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Mark Wettle, Louisville, Kentucky, for Appellant. Zachary C. Bolitho, ASSISTANT UNITED STATES ATTORNEY, Knoxville, Tennessee, for Appellee. **ON BRIEF:** Mark Wettle, Louisville, Kentucky, for Appellant. Zachary C. Bolitho, ASSISTANT UNITED STATES ATTORNEY, Knoxville, Tennessee, Steven S. Neff, ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee.

SUHRHEINRICH, J., delivered the opinion of the court, in which COOK, J., joined. COLE, J. (pp. 23–27), delivered a separate dissenting opinion.

_____

**OPINION**

_____

SUHRHEINRICH, Circuit Judge. Defendant DeMarcus Hardy appeals his conviction and sentence for drugs and firearms convictions following a jury trial. Specifically, he challenges the admission of prior, uncharged drug activity as a violation

1

of Fed. R. Evid. 404(b), as well as the district court's decision to grant an upward departure at sentencing.  We **AFFIRM.**

## I. Background

## A. Pretrial Proceedings

In December 2006, based on a tip from a confidential informant, the Special Investigations Unit of the Chattanooga Police Department obtained a search warrant for Hardy's house at 3412 Jones Street in Chattanooga, Tennessee. On December 11, 2006, ten police officers executed the warrant.  As they pulled up to the house, a person on the front porch started yelling "Police" in an apparent attempt to warn those inside.  Police jumped out of the van, also yelled "Police" and "Search Warrant," and descended on the house.  Hardy burst through the door and took off running.  Officers Sully Batts and Vernon Kimbrough eventually found him hiding in the backyard of another residence. They handcuffed him and brought him back to 3412 Jones Street.  During the search of the house, the officers found two large plastic bags containing a total of 316.84 grams of crack cocaine inside of a jacket hanging in the rear bedroom.  Attached to the jacket was a torn dry cleaning bag that bore the letters "D-E-M-A-R"– the first five letters of Hardy's name.  In that same bedroom, the officers also discovered approximately $5,000 in cash stuffed in the pocket of a pair of jeans.  A nine millimeter handgun was on the floor of the den.  Hardy's wallet was close to the handgun.  The officers also found .45 caliber ammunition, digital scales, and pieces of mail addressed to Hardy at the Jones Street address.  Hardy repeatedly told the officers throughout the search that the drugs were his.

Hardy was charged with one count of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1); one count of possession with the intent to distribute fifty grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), and one count of possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(a)(i).  Hardy pleaded not guilty.

Prior to trial, the Government filed notice of its intent to introduce under Fed. R. Evid. 404(b) evidence of Hardy's prior sales of crack cocaine. Hardy filed a motion in limine. The motion was addressed at trial.

## B. Trial

### 1. Government's Case

The Government called six witnesses. First, Detective Batts told the jury how Hardy fled from the house, and explained how the officers discovered the crack cocaine, the $5,000, the digital scales, the 9mm handgun, the .45 caliber ammunition, and the mail. Batts also related that Hardy claimed the drugs were his.

Next, Wendell Kilgore, a convicted drug dealer and Hardy's cellmate in the county jail, testified that Hardy told him that the police "caught him with, like, a half key of crack." Kilgore also said Hardy told him he had "a trick up his sleeve" because other people were staying in the house when the warrant was executed.

### 2. Evidentiary Hearing

At this point the district court held a hearing on the admissibility of the Government's 404(b) evidence. The Government sought to introduce the testimony of Eugene Coleman and Steven Goodwin, both of whom would testify that they had purchased, or had been with others who had purchased, crack from Hardy. Hardy argued the evidence was being offered to show propensity. The Government responded that it was admissible to prove Hardy's specific intent to possess and specific intent to distribute drugs.

The district court held that evidence of Hardy's prior crack sales was admissible under Rule 404(b), citing, *inter alia*, *United States v. Johnson*, 27 F.3d 1186 (6th Cir. 1994). The court observed that the Government did not have proof of actual possession, which was in dispute. The court found the probative value of the evidence in question outweighed unfair prejudice under Fed. R. Evid. 403 in light of the evidence and the defense. The court also issued a limiting instruction:

> [L]et me advise you that this evidence is being admitted only for you to consider two issues. The first issue is whether the defendant had the intent to possess the drugs alleged in the indictment, and the second one is whether the defendant had the intent to distribute the drugs named in the indictment. . . . You cannot consider this testimony as evidence that the defendant committed the crime that he's on trial for now, other than those two issues. You can only consider this testimony in deciding whether the defendant had the intent as I've described it to you. Do not consider it for any other purpose.

The court repeated a similar instruction in its final charge to the jury.

Coleman testified that between 2002 and 2003 he sold Hardy approximately 4-1/2 ounces of crack cocaine on a weekly basis. Coleman said Hardy would then resell it. Goodwin testified that about one year before Hardy was arrested, Goodwin was with Isaac Moore when Moore purchased crack cocaine from Hardy.

Detective Andy Brown told the jury that based on his experience and training as a narcotics investigator, over 300 grams of crack cocaine is a distribution quantity. He said 300 grams of crack could service about 1,500 crack addicts, and had a street value of $60,000 to $65,000. Brown also stated that drug traffickers have digital scales "to make sure that they're giving the proper amount out when they sell it." He told the jury that drug traffickers typically possess firearms to protect the drugs, their money, and themselves.

The Government's final witness was Investigator Lee Wolff. He assisted in the search. He heard Hardy claim ownership of the crack cocaine found in the jacket. Wolff further testified that before being transported to the police station Hardy asked for his shoes, which were laying on the floor near the 9mm handgun.

### 3. Hardy's Defense

Hardy took the stand in his own defense. He testified that the house on Jones Street was a "family house" where various family members occasionally stayed. Hardy said he fled on the night of December 11, 2006, because he thought the officers were "gangbang[ers]" who came to the house with the goal of retaliating against his cousins.

He also said that the crack cocaine found in the jacket was not his, and denied telling the officers the contrary. He explained he had probably taken the jacket to the dry cleaners for somebody else and just placed it under his name. He further denied knowledge of the handgun found near his shoes and wallet. He said that it likely belonged to someone else in the house at the time of the search.

On cross-examination, Hardy claimed that he did not hear the officers yell "Police" and "Search Warrant" before he ran out of the house. He also told the jury that all of the Government's witnesses were liars who wanted to convict an innocent man. He acknowledged his prior convictions for felony rape, felony aggravated assault, and felony aggravated robbery. He also admitted that he had almost $600 cash in his wallet, even though he did not have a regular job.

Hardy's uncle, Jacob Barrow, also testified. Barrow stated that the house in question belonged to Hardy's grandmother before she died, and that since her death, numerous family members, including Hardy, resided there at different times.

On rebuttal, the Government called Investigator Vernon Kimbrough. Kimbrough testified that the officers were yelling "Police" as they exited the raid van. He also said that Hardy talked throughout the search and took "full responsibility" for the crack cocaine. Investigator Christopher Palmer, the Government's second rebuttal witness, corroborated Kimbrough's testimony.

In the jury instructions, the district court reminded the jury that testimony of Hardy's prior sales of crack cocaine could only be used as evidence of Hardy's "knowledge or intent to possess the drugs as well as his intent to distribute the drugs alleged in the superseding indictment. You must not consider it for any other purpose."

The jury convicted Hardy on all three counts.

## C. Sentencing

The presentence report set a base offense level of 32, and after a two-level increase for obstruction of justice under U.S. Sentencing Guidelines Manual, § 3C1.1, calculated Hardy's total offense level at 34. The presentence report listed Hardy's criminal history. It reported that Hardy had been convicted in state court of reckless endangerment after he caused serious bodily injury to another with a firearm on December 26, 1989. Hardy was sixteen years old at the time and served ten months of imprisonment. On July 3, 1992, Hardy was convicted of aggravated assault and aggravated robbery after he shot a person in the leg. He was discharged to probation. While on bond, Hardy broke into a woman's house, took her into a wooded area, forcibly raped her, and threatened to kill her if she screamed. He told the victim he had a gun. Hardy was convicted of rape, but received an eight-year suspended sentence. He did not receive any criminal history points for the rape conviction. On October 25, 2001, Hardy was convicted of aggravated assault for brutally beating the mother of his child by repeatedly kicking her in the face and head with his steel-toed boots. For this, he was convicted of aggravated assault and sentenced to eleven months of imprisonment.

Despite this extensive criminal history, Hardy received only five criminal history points. This placed him in a criminal history category III. Based on an offense level of 34 and a criminal history category of III, the presentence report calculated Hardy's advisory Guidelines range to be 188 months to 235 months of imprisonment. However, because Hardy faced a mandatory minimum sentence of 60 months of imprisonment for his § 924(c) conviction, the presentence report determined that Hardy's effective Guidelines range was 248 months to 295 months.

The presentence report also stated that a departure from the Guidelines might be warranted under section 4A1.3 because Hardy's criminal history did not adequately represent the seriousness of his prior criminal conduct. The report noted that had Hardy's rape sentence not been suspended, the conviction would have counted for criminal history points and Hardy would be classified as a career offender, resulting in a Guidelines range of 420 months to life.

At sentencing, the district court advised the parties that Hardy might receive a sentence above the Guidelines range. Neither party objected to the presentence report, and the district court stated the Guidelines range was 248 to 295 months of imprisonment. The district court recognized the advisory nature of the Guidelines and outlined Hardy's criminal history. Hardy spoke in allocution. He maintained his innocence, accused his trial attorney of ineffective assistance of counsel, and said he was a "man of God" who was "not a threat to society." Hardy's attorney asked for a within-Guidelines sentence. The district court nonetheless determined that an upward departure was warranted under section 4A1.3, based on Hardy's prior criminal record. The district court explained it was departing to a criminal history category VI, which would have applied had Hardy qualified as a career offender. As a result of the departure, Hardy's revised Guidelines range was 420 months to life imprisonment. The district court stated that it believed a 420-month sentence was sufficient but not greater than necessary to serve the purposes of 18 U.S.C. § 3553(a).

The district court also indicated that even if it had not departed upward under section 4A1.3, it would have imposed the same sentence by varying upward from the Guidelines range under 18 U.S.C. § 3553(a). The court discussed the § 3553(a) factors. It remarked that based on the "background and history of the defendant" and "the nature and circumstances of the offense," a sentence of 420 months imprisonment was "sufficient but not greater than necessary to achieve purposes" of § 3553(a). The court stressed the importance of incapacitating Hardy due to his "propensity to commit extremely violent crimes with guns, where people run a substantial risk of being severely injured if not killed." The court also felt that such a lengthy sentence was essential to "protect society from future crimes of this defendant."

After announcing the sentence, the court asked if there were any objections to the sentence imposed. There were none.

Several hours after sentencing, Hardy amended his previously filed motion for new trial to include a request for resentencing. The district court denied both motions. In denying the motions, the court stated again that "Defendant's criminal history

category under-represented the seriousness of both his criminal history and the likelihood he would commit other crimes." The court said Hardy had "lived a life of crime," and a "criminal history category of III was inadequate to address the near-inevitability of Defendant committing additional crimes upon his release." The court stated that Hardy's sentence "was substantially driven by a need to protect the public from further crimes–particularly violent ones."

## D. Appeal

On appeal, Hardy challenges the admission of his prior crack cocaine sales under Fed. R. Evid. 404(b) and the upward departure of his sentence.

## II. Analysis

## A. Prior Bad Acts

Hardy claims that the district court abused its discretion by finding that evidence of Hardy's prior crack sales was admissible under Federal Rules of Evidence 404(b) and 403 for the purpose of proving intent to distribute. Under Rule 404(b), evidence of "other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." It may be admissible "as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). Before the court may admit 404(b) evidence, it must: (1) determine whether this is sufficient evidence that the prior acts occurred; (2) determine whether the other act is admissible for one of the proper purposes outlined in the rule; and (3) apply Rule 403 balancing to determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *United States v. Allen*, 619 F.3d 518, 523 (6th Cir. 2010), *cert. denied*, 131 S. Ct. 841 (2010) (citation omitted). The district court's decision to admit such evidence is reviewed for abuse of discretion. *Id.* (citation omitted).

Hardy challenges all three prongs of the standard.

### 1.  Preliminary Finding

Hardy asserts that the district court should have made a preliminary finding that the prior drug sales occurred.  Hardy did not make this argument below and has therefore forfeited it on appeal.  *See Vance v. Wade*, 546 F.3d 774, 781 (6th Cir. 2008) ("[T]he failure to present an issue to the district court forfeits the right to have the argument addressed on appeal.") (internal quotation marks and citation omitted).  The argument fails anyway. *See Huddleston v. United States*, 485 U.S. 681, 688-89 (1988) (concluding "that a preliminary finding by the court that the Government has proved the act by a preponderance of the evidence is not" required by the text of the rule and that "similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor"); *United States v. Trujillo*, 376 F.3d 593, 605 (6th Cir. 2004) (applying *Huddleston*; holding that the district court did not err in failing to make a factual determination that the alleged bad acts occurred because "a jury could reasonably have concluded that [the defendant] committed the prior bad acts based upon" the witnesses's testimony).  In this case, Coleman's and Goodwin's testimony was sufficient for the jury to conclude that the acts occurred.  The district court did not err by failing to make a preliminary factual determination that the prior sales of crack cocaine took place.

### 2.  Proper Purpose

Hardy contends that Goodwin's and Coleman's testimony was not admissible under Rule 404(b) to prove intent because it was not part of the same scheme nor did it show the same modus operandi of the charged conduct.  In determining whether the proffered evidence is admissible for a legitimate purpose, it must be probative of a material issue other than character. *United States v. Carney*, 387 F.3d 436, 451 (6th Cir. 2004) (quoting *Huddleston*, 485 U.S. at 686)).  It is if (1) the evidence is offered for a permissible purpose, (2) that purpose is in issue, and (3) if probative to the purpose for which it is offered. *United States v. Jenkins*, 345 F.3d 928, 937 (6th Cir. 2003) (citing *Johnson*, 27 F.3d at 1190-91).

### a. Permissible Purpose

The crime of possession of cocaine with intent to distribute is a specific intent crime such that the defendant's intent is a statutory element of the offense. *United States v. Matthews*, 440 F.3d 818, 829 (6th Cir. 2006) (citation omitted).

### b.  In Issue

This court has specifically held that "where the crime charged is one requiring specific intent, the prosecutor may use 404(b) evidence to prove that the defendant acted with the specific intent notwithstanding any defense the defendant might raise." *Johnson*, 27 F.3d at 1192. *See also United States v. Bilderbeck*, 163 F.3d 971, 977 (6th Cir. 1999) (stating that "where the crime charged is one requiring specific intent, the prosecutor may use 404(b) evidence to prove that the defendant acted with specific intent notwithstanding that the defense was lack of possession, not lack of intent to distribute"). *But see United States v. Jenkins*, 593 F.3d 480, 486 (6th Cir. 2010) (questioning whether intent is truly in issue when the defendant claims he did not possess the drugs at all, let alone possess with intent to distribute).

Hardy indicated to the district court that he was challenging both knowledge and intent.   Intent is in issue because Hardy denied possessing the cocaine altogether. *See Johnson*, 27 F.3d at 1193 (holding that intent was in issue where the defendant pled not guilty and therefore did not admit he possessed the cocaine, but denied possession altogether).   On the other hand, "knowledge" was not in issue because Hardy did not claim he "was unaware that he was committing a criminal act." *See Johnson*, 27 F.3d at 1194 (holding that knowledge was not in issue because the defendant did not argue that he possessed the drugs by mistake or accident, but denied that he was possessing the drugs at all).

### c.  Probity

"To determine if evidence of other acts is probative of intent, we look to whether the evidence relates to conduct that is 'substantially similar and reasonably near in time' to the specific intent offense at issue." *United States v. Haywood*, 280 F.3d 715, 721 (quoting *United States v. Blankenship*, 775 F.2d 735, 739 (6th Cir. 1985)).  This court has "repeatedly recognized that prior drug-distribution evidence is admissible [under Rule 404(b)] to show intent to distribute." *United States v. Ayoub*, 498 F.3d 532, 548 (6th Cir. 2007) (citing *Jenkins*, 345 F.3d at 938 (collecting cases)); *United States v. Bell*, 516 F.3d 432, 443 (6th Cir. 2008) (quoting *Ayoub*); *see also United States v. Love*, 254 F. App'x 511, 518 (6th Cir. 2007) (same).

As the Government asserts, there is ample support for its position.  For example, in *United States v. Mauldin*, 109 F.3d 1159 (6th Cir. 1997), the defendant was charged with possession with intent to distribute cocaine as well as firearms charges after police discovered the drugs in his vehicle during a *Terry* stop.  The defendant contended he did not commit the charged crime.  This court allowed the government to introduce evidence that the defendant previously sold some cocaine.  "Because the government was obligated to prove that Mauldin possessed the cocaine and that he did so with the specific intent of distributing it, the evidence of a similar act of possession was admissible." *Id.* at 1161 (citation omitted).  This court also found the evidence more probative than prejudicial because "[b]oth events occurred near the same location," the prior sale was for a substantial quantity of drugs, and the amount of money involved was inconsistent with personal use.  *Id.*

In *United States v. Myers*, 123 F.3d 350 (6th Cir. 1997), the defendant was charged with possession with intent to distribute crack cocaine.  The defendant denied possession.  The government introduced evidence of four prior drug transactions.  The *Myers* court ruled the evidence admitted for a proper purpose, citing *Johnson*, 27 F.3d at 363.  In *Ayoub*, the defendant moved to suppress evidence of four prior controlled buys of marijuana from Ayoub at his home,  which occurred four years prior to the charged offense.  This court held the evidence was admissible to show identity of the

possessor of the guns and drugs and intent to distribute the drugs. *Ayoub*, 498 F.3d at 548.[1]

Nevertheless, as this court recently recognized, on the question of whether proof of a defendant's prior convictions was *probative* of specific intent, "[o]ur precedents are hard to reconcile on this point." *Jenkins*, 593 F.3d at 485 (comparing *Johnson*, 27 F.3d at 1192 (stating that "where the crime charged is one requiring specific intent, the prosecutor may use 404(b) evidence to prove that the defendant acted with the specific intent") *with Bell*, 516 F.3d at 444 (stating that "to be probative of a defendant's present intent to possess and distribute, his prior convictions for drug distribution must be related in some way to the present crime for which the defendant is on trial")). Hardy relies chiefly on *Bell*. *See Bell*, 516 F.3d at 441-46 (holding that four prior state drug convictions were improperly admitted because they "were for offenses that occurred several years previously and were not alleged to be part of the same scheme to distribute drugs or to involve a similar *modus operandi*" and as such, were not probative of whether Bell intended to possess and distribute drugs on the charges at issue).[2]

However, as the Government points out, *Bell* is inconsistent with prior precedent and is therefore not controlling. *See, e.g., Dupont Dow Elastomers, LLC v. NLRB*, 296 F.3d 495, 506 (6th Cir. 2002) (stating that "[w]hen a later decision of this court conflicts with the holding of a prior decision, it is the earlier case that controls"); *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985) ("A panel of this Court cannot overrule the decision of another panel. The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision.").

---

[1] The Government's reliance on *United States v. Matthews*, 440 F.3d 818 (6th Cir. 2006), is less persuasive. There, a substantial amount of cocaine was found on the defendant's person and he was charged with possession with intent to distribute crack cocaine and gun charges. The district court allowed the government to introduce the testimony of a witness that had previously purchased crack cocaine from Matthews to establish knowledge and intent to distribute. This Court affirmed. *Matthews* is distinguishable though, because there the defendant asserted that he had picked up a clear plastic bag off the street without knowing it contained crack. Thus, the evidence was properly admitted "to prove that he knew what cocaine looked like." *Id.* at 829. *See United States v. Freeman*, Nos. 08-5677, 08-5678, 2010 WL 4244268 at *11 (6th Cir. Oct. 19, 2010) (distinguishing *Matthews* on this basis).

[2] *Bell* had not been issued at the time of the district court's decision.

Given this Circuit's precedent, it cannot be said that the district court abused its discretion on the issue of probity.

### 3. 403 Balancing

The district court must also balance the probative value of the evidence against its prejudicial effect. One factor in that assessment is the availability of other means of proof, which would reduce the need for potentially confusing evidence. *Myers*, 123 F.3d at 363.   Limiting instructions are also a factor. *Id.*

Hardy argues that the district court abused its discretion in failing to consider "the wealth of alternative evidence" to establish the requisite specific intent; namely, the expert witness's testimony concerning the distribution quantity of cocaine, the presence of a firearm, the money in Hardy's wallet, the cocaine found in the clothes linked to Hardy, and Hardy's own statements to the police claiming ownership of the cocaine.

Here, the district court found that the probative value of the prior acts evidence outweighed the unfair prejudice "in light of the evidence and the defense," noting that the Government did not have evidence of actual possession. The district court gave a strong cautionary instruction, and repeated a similar instruction during its final charge to the jury.

In *Ayoub*, we found no error based on similar instructions, and also relied on the fact that the defendant admitted the other evidence against him was overwhelming. *See Ayoub*, 498 F.3d at 548-49; *see also Myers*, 123 F.3d at 363-64 (finding that the district court did not err in its 403 balancing where there was scant evidence of intent; the other acts were relatively close in time to the alleged act; and instructions were clearly phrased, correctly focused on intent, and warned of potential misuses of other acts factors). *Cf. Jenkins*, 593 F.3d at 485-86 (holding that prejudicial effect outweighed probative value of an unrelated drug conviction on facts presented, where the government had ample evidence to convict, and its evidence on issue of possession was not overwhelming); *Jenkins*, 345 F.3d at 939 (holding that prior acts evidence was unfairly prejudicial where the government's evidence was weak and the only real

evidence offered by the government to establish knowledge came from the contested 404(b) prior bad acts).

In short: Our review of evidentiary rulings is limited to abuse of discretion. The district court found that the prior acts evidence was admitted for a proper purpose, consistent with case law from this circuit; determined that its probative value was not outweighed by its prejudicial effect, based on the evidence and the defense; and gave two strong cautionary instructions to the jury. In other words, the district court did not abuse its discretion in admitting the prior acts evidence.

### 4. Harmless Error

Admission of other-acts evidence constitutes "harmless error" if the other record evidence of guilt is overwhelming, eliminating any fair assurance that the conviction was substantially swayed by the error. *United States v. Murphy*, 241 F.3d 447, 453 (6th Cir. 2001). "An error is harmless unless one can say, with fair assurance that the error materially affected the defendant's substantial rights, –that the judgment was 'substantially swayed' by the error." *Allen*, 619 F.3d at 523 (internal quotation marks and citation omitted). Whether the jury was 'substantially swayed' by the improper other-acts evidence, "generally depends on whether the properly admissible evidence of the defendant's guilt was overwhelming." *Haywood*, 280 F.3d at 724.

In *Ayoub*, we held that the defendant "f[ell] on his own sword" in arguing that the alternative evidence against him established unfair prejudice because, as the defendant stated, "the evidence against him was 'overwhelming.'" *Ayoub*, 498 F.3d at 548. *But see Jenkins*, 593 F.3d at 486 (finding the government's argument that any error in admission of the prior acts evidence was harmless given the overwhelming evidence against the defendant "amount[ed] to a concession that the admission of this evidence, for this purpose, was merely piling on"; concluding that the error was not harmless because the government's evidence on the element of possession was not overwhelming). Indeed, as Hardy asserts, there was a "wealth of alternative evidence" against him, including his own statements to the police that he possessed the drugs. Like *Ayoub*, any error here could only be harmless.

**B.  Response to Dissent**

The dissent claims that we have ignored *Bell*, and misapplied *Jenkins*.  But, (as we noted in our opinion, *supra*, at 12) *Jenkins* itself recognizes that our precedent on this point is problematic:

> That leaves unanswered, of course, the question whether proof of Jenkins's prior convictions was probative of that issue as well. Our precedents are hard to reconcile on this point. *Compare, e.g.,* [*United States v. Johnson*, 27 F.3d 1186, 1192 (6th Cir. 1994)] ("where the crime charged is one requiring specific intent, the prosecutor may use 404(b) evidence to prove that the defendant acted with the specific intent") *with United States v. Bell*, 516 F.3d 432, 444 (6th Cir.2008) ("to be probative of a defendant's present intent to possess and distribute, his prior convictions for drug distribution must be related in some way to the present crime for which the defendant is on trial").

*Jenkins*, 593 F.3d at 485.  It is for this reason that we felt it necessary to state that, because "*Bell* is inconsistent with prior precedent," it "is therefore not controlling." *Supra*, at 13.  And because *Jenkins* follows *Bell*, it too cannot trump prior precedent.

And "[o]ur precedents are hard to reconcile" on the issue of probity.  Contrary to the dissent's assertion, *Myers* did *not* hold that the prior bad acts testimony by the four witnesses was "part of the same scheme," and most of it occurred after the crime of indictment.  *See Myers*, 123 F.3d at 362-63.  Rather, in holding that the district court admitted the evidence for a proper purpose under Rule 404(b), *Myers* applied the rule in *Johnson*, that  "where the crime charged is one requiring specific intent, the prosecutor may use 404(b) evidence to prove that the defendant acted with the specific intent notwithstanding any defense the defendant might raise." *Johnson*, 27 F.3d at 1192. *Johnson* cautioned that this did not mean that other acts evidence is automatically admissible in such cases, but that it was up to "the trial court to determine whether such evidence, in the context of a given case, is more substantially prejudicial than probative." *Id.* (citing Fed. R. Evid. 403). *See also id.* at 1193 (stating that "regardless of Johnson's defense, since the government was obligated to prove not only that Johnson possessed the cocaine, but that he did so with the specific intent of distributing it, the government's

evidence of other similar acts of possession with intent to distribute was admissible subject to the court's duty to weigh the probative value of the evidence against its prejudicial effect"). In other words, per *Johnson*, prior similar bad acts are probative of specific intent, subject to 403 balancing.

*Ayoub* is relevant here too. Although, as the dissent noted, Ayoub conceded at trial that four prior drug transactions occurring four years prior to the charged activity were probative of the crime at issue, he argued that their probative value were outweighed by their prejudicial effect. *Ayoub*, 498 F.3d at 534. Thus, the *Ayoub* court's "remarks" on the question of probity were slightly more than dicta because the probative value of the evidence was integral to resolving Ayoub's challenge to the 403 balancing. Judge Cole, writing for the panel, stated:

> Second, this evidence was admissible for a proper purpose: to show (1) Ayoub's identity as the possessor of the guns and drugs recovered in the present case, and (2) his intent to distribute the drugs. Here, the officers recovered over a pound of marijuana, two firearms, drug paraphernalia, scales, bowls, plastic bags, and cutting agents. The similar evidence in 2000 led Ayoub to confess to possessing the narcotics at that time, and he subsequently pleaded guilty to attempted delivery and manufacture of marijuana. We have repeatedly recognized that prior drug-distribution evidence is admissible to show intent to distribute. *United States v. Jenkins*, 345 F.3d 928, 938 (6th Cir.2003) (collecting cases). Indeed, Ayoub did not contest at trial that the year-2000 evidence was probative. . . .
>
> On appeal, however, in an apparent attempt to minimize the probative value of the year-2000 evidence, Ayoub notes that the current evidence against him "was overwhelming, especially given [his] 'full and complete' confession, both orally and in writing." (Ayoub's Br. 30.) He further states that the physical evidence in the present case, such as the packaging materials and mixing agents, showed that he "was not a mere drug user but was actively distributing narcotics." ( *Id*.) Moreover, he notes that "the sizeable weight of the marijuana ... and its secretion in the rafters of the garage ... strongly indicate the narcotics were intended for distribution." ( *Id*. at 30-31.) We agree that this evidence is all quite probative of Ayoub's intent to distribute, but that does not mean the year-2000 evidence was not probative; at best, it means that the year-2000 evidence was not necessary for the conviction. But the question here is simply whether the purpose for which the evidence was

offered (i.e., identity and intent) was "in issue," *see Jenkins*, 345 F.3d at 937, and it plainly was.

*Ayoub*, 498 F.3d at 548.

Furthermore, in holding that the evidence was properly admitted, the court concluded that under the

> third final, step of the Rule 404(b) analysis, the probative value of the year-2000 evidence was not substantially outweighed by its potential prejudicial effect. The district court provided a detailed instruction to the jury that this evidence was offered to establish identity and intent but not "to demonstrate Mr. Ayoub's criminal propensities, or to demonstrate that he is a bad person ... and [that the jury] must not receive the evidence for those purposes." (JA 480.) Additionally, as discussed, Ayoub admits the other evidence [against] him was "overwhelming." *Cf. Jenkins*, 345 F.3d at 939 (concluding that prior-acts evidence was unduly prejudicial where "the evidence proffered against [the defendant] by the Government was weak," and "the only real evidence offered by the Government in order to establish her knowledge [of cocaine receipt] came from the contested Rule 404(b) evidence").

*Ayoub*, 498 F.3d at 548-49.  Here too, Hardy argued that the government had a "wealth of alternative evidence" to establish specific intent; and the district court issued limiting instructions.

*Mauldin*, cannot be dismissed so easily either.  In that published opinion, this court held that "[t]he government was permitted to introduce Rule 404(b) evidence that previously Mauldin had made a sale of cocaine," because "Mauldin was charged with a specific intent offense of possession of cocaine with intent to distribute," Mauldin "contended that he did not commit the charged act," and "the government was obligated to prove that Mauldin possessed the cocaine and that he did so with the specific intent of distributing it, the evidence of a similar act of possession was admissible subject to the court's duty to weigh the probative value of the evidence against its prejudicial effect." *Id.*  Not insignificantly, the *Mauldin* court cited *Johnson*, 27 F.3d at 1191-93. The *Mauldin* court held the evidence admissible because both events occurred near the same location, the prior event was for the purchase of a substantial quantity of drugs, and

the amount of money involved was inconsistent with personal drug use. *Mauldin*,109 F.3d at 1161. Finally, the district court in that case gave cautionary instructions. *Id.*

In addition, it is difficult to distinguish this case from *Ayoub*, which found the other-acts evidence more probative than prejudicial under the Rule 403 balancing. On top of that, *Ayoub* also found any error harmless:

> We sidetrack for a moment to note that Ayoub falls on his own sword here: his argument shows that even if the year-2000 evidence were improperly admitted, any error would be harmless because, as he states, the evidence against him was "overwhelming." *Cf. United States v. Murphy*, 241 F.3d 447, 453 (6th Cir.2001) ("[T]his Court finds that any error, if any, in admitting evidence of 'other acts' is harmless in light of the overwhelming evidence of Defendant's guilt.") As recounted above, Ayoub explains in detail why the jury properly convicted him of not merely using the drugs but of "actively distributing narcotics." This alone is dispositive of his Rule 404(b) claim.

*Ayoub*, 498 F.3d at 548.

Which brings us to the real problem: "[o]ur precedents are difficult to reconcile on this point." *Jenkins*, 593 F.3d at 485. *Johnson* set out a fairly narrow, but straightforward rule. Again:

> Thus, where the crime charged is one requiring specific intent, the prosecutor may use 404(b) evidence to prove that the defendant acted with the specific intent notwithstanding any defense the defendant might raise.
>
> The rule might be stated as follows: where there is thrust upon the government, either by virtue of the defense raised by the defendant or by virtue of the elements of the crime charged, the affirmative duty to prove that the underlying prohibited act was done with a specific criminal intent, other acts evidence may be introduced under Rule 404(b).
>
> That is not to say that the other acts evidence is automatically admissible in such cases. There remains the very important duty in the trial court to determine whether such evidence, in the context of a given case, is more substantially prejudicial than probative. Fed.R.Evid. 403.

*Johnson*, 27 F.3d at 1192. *Bell* appears to alter that rule:

However, whether the evidence of Bell's prior drug convictions was probative on the issue of intent is a closer question. "To determine if evidence of other acts is probative of intent, we look to whether the evidence relates to conduct that is 'substantially similar and reasonably near in time' to the specific intent offense at issue." *Haywood*, 280 F.3d at 721 (quoting *Blankenship*, 775 F.2d at 739). *But see United States v. Ismail*, 756 F.2d 1253, 1260 (6th Cir.1985) ("There is no absolute maximum number of years that may separate a prior act and the offense charged."). . . .

Likewise, while we "have repeatedly recognized that prior drug distribution evidence is admissible to show intent to distribute," *Ayoub*, 498 F.3d at 548 (citing *Jenkins*, 345 F.3d at 938 (collecting cases)), our cases have only found such evidence probative of present intent to possess and distribute when the prior distributions were part of the same scheme or involved a similar modus operandi as the present offense. *See, e.g., United States v. Robison*, 904 F.2d 365, 368 (6th Cir.1990) (admitting testimony about the defendant's statements to co-conspirator regarding his intent to distribute in prior drug transactions to show present intent to distribute in transaction with same co-conspirator); *United States v. Rodriguez*, 882 F.2d 1059, 1064-65 (6th Cir.1989) (admitting evidence of prior drug transactions with same accomplice as in present case for the purpose of showing intent, plan, and knowledge). *Unless the past and present crime are related by being part of the same scheme of drug distribution or by having the same modus operandi, the fact that a defendant has intended to possess and distribute drugs in the past does not logically compel the conclusion that he presently intends to  possess and distribute drugs. See United States v. Bakke*, 942 F.2d 977, 983 (6th Cir.1991) (holding that evidence of the defendant's arrest in a "totally unrelated drug transaction" six months after the charged drug conspiracy only showed that the defendant was a drug dealer at the time of the later transaction and did not prove that the defendant was a member of the drug conspiracy). Indeed, a person may be a distributor of drugs on one occasion, and a mere user on another. The only way to reach the conclusion that the person currently has the intent to possess and distribute based solely on evidence of unrelated prior convictions for drug distribution is by employing the very kind of reasoning- i.e., once a drug dealer, always a drug dealer-which 404(b) excludes. *See Old Chief v. United States*, 519 U.S. 172, 180-81, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997). *Thus, to be probative of a defendant's present intent to possess and distribute, his prior convictions for drug distribution must be related in some way to the present crime for which the defendant is on trial.*

*Bell*, 516 F.3d at 443-44 (emphases added).

Rule 404(b) evidence must be carefully managed to avoid it becoming precisely what it is designed to prevent: propensity or character evidence. The *Bell* and *Jenkins* courts' attempt to clarify the principle of Rule 404(b) is understandable. However, with few exceptions, the district courts of this circuit have properly exercised their discretion in admitting such evidence after Rule 403 balancing, as they are allowed to do under the law of this circuit. And that is certainly true in the case before us today.

### C.  Upward Departure

The district court departed upward under section 4A1.3(a)(1) from the advisory Guidelines range of 248 to 295 months to a Guidelines range of 420 months to life imprisonment. Section 4A1.3(a) provides for an upward departure when a defendant's criminal history category does not adequately reflect his criminal history. Section 4A1.3 states in relevant part that "[i]f reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, an upward departure may be warranted." USSG § 4A1.3(a)(1). "[W]hen reviewing the reasonableness of an upward departure, we consider the seriousness of the defendant's past criminal conduct, the likeliness of recidivism, prior similar adult conduct not resulting in criminal convictions, previous lenient sentences for offenses, whether the sentence will have a deterrence on future criminal conduct, the necessity of isolating the defendant from the community and the length of time necessary to achieve rehabilitation, if rehabilitation is possible." *United States v. Griffin*, 530 F.3d 433, 441 (6th Cir. 2008) (internal quotation marks and citation omitted).

All of the *Griffin* factors support the district court's decision to depart upward. Hardy has a serious criminal past. The district court outlined Hardy's prior record at sentencing. He forcibly raped a woman, shot a person during a robbery, assaulted a person with a deadly weapon, and kicked a woman in the face repeatedly with steel-toed boots. The court found the likelihood of recidivism is high, because Hardy's whole life has been a life of crime, and prior bouts in prison and on probation failed to evoke change. Hardy was previously arrested (but not ultimately charged) with unlawfully

carrying a weapon, similar to the instant charge. The court expressly found a need to protect the public. And, as the district court noted, it does not appear that Hardy can be rehabilitated, and the record reflects that he showed no remorse. Further, an upward departure was also warranted because Hardy has "an extensive record of serious, assaultive conduct" and "received what might now be considered extremely lenient treatment in the past." USSG § 4A1.2, comment. (backg'd) (2007).

The rape offense was properly considered. It received no criminal history points because the sentence was suspended. *See* USSG §§ 4A1.2(b)(2); 4A1.2(e)(3). *See also* USSG § 4B1.2, comment. (n.3) (incorporating time limitations under USSG § 4A1.2 for career offender provision).

Hardy complains that the length of his sentence is substantively unreasonable because it is "greater than necessary" to accomplish the sentencing goals set out in 18 U.S.C. § 3553(a). Here, the court carefully articulated a host of factors at sentencing in its memorandum and order to support its decision. The district court's decision is entitled to deference, and is not unreasonable. *See United States v. Herrera-Zuniga*, 571 F.3d 568, 587 (6th Cir. 2009) (and cases cited therein).

The district court also did not act unreasonably in sentencing Hardy as though he were a career offender, which he would have been had his rape conviction not resulted in a suspended sentence. *See United States v. Robinson*, 357 F. App'x 677, 689-90 (6th Cir. 2009), *cert. denied*, 130 S. Ct. 3440 (2010). *See also United States v. Myers*, 589 F.3d 117, 125-26 (4th Cir. 2009), *cert. denied*, 130 S. Ct. 3306 (2010). The court explained that Hardy had four previous crimes of violence, and that his history clearly demonstrated a violent criminal pattern and future threat.

The 420-month sentence is also justifiable as a variance from the advisory Guidelines range. The district court stated that had it not departed upward under section 4A1.3, it would have found the original Guidelines range of 248 to 295 months inadequate to fulfill the purposes of 18 U.S.C. § 3553(a) due to Hardy's "propensity to commit extremely violent crimes with guns, where people run a substantial risk of being severely injured if not killed." It stated that Hardy's background and history and nature

of the offense warranted a departure.  It added that the 420 months was sufficient but not greater than necessary to protect the public and to impress upon Hardy the seriousness of his offenses.  *See Herrera-Zuniga*, 571 F.3d at 587 (district court has authority to deviate from the advisory Guidelines range under either § 3553(a) or section 4A1.3).  *See also id.* at 589 (noting that "the court's authority under § 3553(a) more broadly permits consideration of the nature and circumstances of the offense and the history and characteristics of the defendant").

In sum, the sentence imposed was both substantively and procedurally reasonable, and the district court did not abuse its discretion.  *See Gall  v. United States*, 552 U.S. 38 (2007).

### III.  Conclusion

The judgment of the district court is **AFFIRMED**.

———————————

**DISSENT**

———————————

COLE, Circuit Judge, dissenting.  Because the majority ignores *United States v. Bell*, 516 F.3d 432 (6th Cir. 2008), and misapplies *United States v. Jenkins*, 593 F.3d 480 (6th Cir. 2010), to reach a conclusion that the record and the Federal Rules of Evidence do not support, I respectfully dissent.

*Bell*'s holding that Rule 404(b) evidence is probative of intent only "when the prior distributions were part of the same scheme or involved a similar *modus operandi* as the present offense" is not at odds with our prior case law and must be followed.  *Bell*, 516 F.3d at 443.  The majority disagrees and points to a series of cases which they claim preclude *Bell*'s finding on probity; none of them do.  The 404(b) evidence admitted in *United States v. Myers*, 123 F.3d 350,  354 (6th Cir. 1997), was probative of intent because it was "part of the same scheme."  *Bell*, 516 F.3d at 443.  All of the other acts in that case occurred during the period where Myers and a co-conspirator were engaged in a scheme to sell crack cocaine.  *See Myers*, 123 F.3d at 354.  *United States v. Ayoub*, 498 F.3d 532 (6th Cir. 2007), is of no moment either because Ayoub never contested probative value, so *Ayoub*'s discussion of the issue is dicta.  *See Ayoub*, 498 F.3d at 548.  And *United States v. Mauldin*, 109 F.3d 1159 (6th Cir. 1997), does not bar *Bell*'s holding because *Mauldlin* did not fully describe what the other-acts evidence consisted of or how it related to the charged crime, and the little that it did say about that issue is not inconsistent with a finding that the prior-acts reflected the same scheme or *modus operandi* as the charged conduct.  *See Mauldin*, 109 F.3d at 1161.

Applying *Bell* to the case at hand bars the majority's finding on probity.  The other acts admitted by the district court were not probative of intent because they did not form part of the same scheme or show a similar *modus operandi*—a point underscored by the government's failure to argue in the alternative that they did.

The majority's Rule 403 balancing analysis is also off the mark. I see no way to distinguish this case from *Jenkins*, which vacated the defendant's conviction after finding that the other-acts evidence was more prejudicial than probative. Just as in *Jenkins*, intent was nominally at issue in Hardy's trial but possession was "the battleground." *Id*. at 486. Also like in *Jenkins*, the government's evidence of intent to distribute here was overwhelming—a detective testified that the quantity of cocaine discovered at the house (along with a digital scale) could satisfy *1,500* crack addicts, and Hardy's cellmate said, in essence, that Hardy told him that his entire defense was "a trick"—so the probative value of the other-acts evidence was "microscopic at best" and admitting it was plainly "piling on." *Id*. at 485-86. The prejudicial effect of the evidence, moreover, was obvious—once a drug dealer, always a drug dealer—and made worse by the fact that, *unlike* in *Jenkins*, the evidence of prior drug-dealing had not been found by a jury beyond a reasonable doubt.

The harmlessness analysis tracks *Jenkins* too. The error at trial cannot be ignored because the government's evidence of *constructive* possession—a separate element—"though solid, was not overwhelming." *Id.* at 486. I therefore cannot "say with fair assurance that the admission of the [404(b) evidence] . . . did not substantially sway the results at trial." *Id.* (internal quotation marks omitted). Moreover, *Ayoub* does not undermine the analogy between this case and *Jenkins*. The defendant in *Ayoub* conceded that the evidence on *all* the elements of drug distribution was overwhelming, unlike here, where the defendant maintains—and I agree—that the evidence of possession was not so strong that the improper admission of Hardy's prior bad acts can be said not to have prejudiced the jury's consideration of that element.

The majority insists that I have the cases wrong and that *Bell* cannot be reconciled with what came before it. Not so. *Bell* did not *overrule* any prior holdings. In finding that prior evidence of drug distribution is probative of intent only where "the prior distributions were part of the same scheme or involved a similar *modus operandi* as the present offense" *Bell* gave a precise shape to what other panels has passed on *sub silentio*; a perfectly legitimate—and binding—exercise of panel authority. *Bell*, 516

F.3d at 444; *see Hilliard v. United States*, 157 F.3d 444, 449 (6th Cir. 1998) (describing subsequent panel's refinement of a prior panel rule); *cf. United States v. Bowers*, 615 F.3d 715, 721-22 (6th Cir. 2010) (quoting *Hagans v. Lavine*, 415 U.S. 528, 533 n.5 (1974) ("[W]hen questions of jurisdiction have been passed on in prior decisions *sub silentio*, [we are not] bound when a subsequent case finally brings the jurisdictional issue before us.")). Viewed this way, *Bell*'s "scheme or *modus operandi*" test is not a break with the longstanding requirement that evidence of prior bad acts are probative only where they are "substantially similar and reasonably near in time" to the charges in the indictment, but a refinement of it as applied to drug distribution cases. *United States v. Haywood*, 280 F.3d 715, 721 (6th Cir. 2002) (quoting *United States v. Blankenship*, 775 F.2d 735, 739 (6th Cir. 1985)).

The modesty and propriety of *Bell*'s holding on probity is evident on considering the definitions of "scheme" and "*modus operandi.*" The latter means "[a] method of operating or a manner of procedure,"[1] *Black's Law Dictionary* (9th ed. Online Ver. 2009), and the former "a plan of action devised in order to attain some end." *Oxford English Dictionary*, Def. 5.b. (Online Ver. Mar. 2011). These broad definitions plainly encompass the facts of our prior holdings on probity while giving more nuanced guidance to future courts tasked with applying our rule that other acts evidence must be "substantially similar and reasonably near in time" to be probative. *Haywood*, 280 F.3d at 721.

Consider *Ayoub*: the other-acts evidence there consisted of testimony describing a search of Ayoub's residence in 2000 which yielded "approximately three pounds of marijuana in gallon-size bags, approximately five grams of cocaine, a triple-beam scale and a Ruger .45-caliber handgun." *Ayoub*, 498 F.3d at 547. Likewise, scales, handguns, plastic bags, and a pound of marijuana turned up in the search of Ayoub's parents' residence in 2004, which led ultimately to the federal conviction we reviewed in *Ayoub*. *See id.* at 536. To be sure, this evidence from 2000 related to conduct that is

---

[1] *Black's* also describes the more specific—and restrictive—sense: "a patter of criminal behavior so distinctive that investigators attribute it to the work of the same person." *Black's Law Dictionary* (9th ed. Online Ver. 2009).

"substantially similar" to the conduct adjudicated at Ayoub's 2005 trial, but the comparison also reveals a strikingly parallel scheme or *modus operandi* to distribute marijuana.

As for *United States v. Johnson*, 27 F.3d 1186 (6th Cir. 1994), it is not in tension with *Bell* either. The majority sees a conflict between the *Johnson* court's holding that "where the crime charged is one requiring specific intent, the prosecutor may use 404(b) evidence to prove that the defendant acted with the specific intent" and *Bell*'s scheme/*modus operandi* rule. But this passage misleads by making it appear as if the *Johnson* court held that 404(b) evidence—of any sort, and irrespective of its similarity to the charged conduct—is always probative where specific intent is an element of the charged crime. As the majority obliquely acknowledges, however, *Johnson* actually found, consistent with prior precedent, that "*similar* acts of possession with intent to distribute" were probative of the specific intent at issue in that case. *Johnson*, 27 F.3d at 1193 (emphasis added). So the question remains whether *Bell* legitimately refined what "similar" means for drug-distribution crimes by looking closely at the prior case law and expressing in more specific language our prior *sub silentio* holdings. I believe it did and the facts of *Johnson* underscore further that prior panels have been applying without saying so, the scheme/*modus operandi* rule that *Bell* properly articulated.

And, as with our other cases, the facts in *Johnson* conform to *Bell*'s rule. There, the evidence of prior bad acts consisted of testimony by a confidential informant that Johnson had sold him crack cocaine on two occasions *one month* prior to the unconsummated sale of crack cocaine (apparently orchestrated by the same informant) that led to the charging of the crime of indictment. *See Johnson*, 27 F.3d at 1189. While the opinion does not make clear whether the prior acts were undertaken with the same *modus operandi* as the charged conduct, it is plain that the prior acts were part of the same *scheme* to sell drugs as that charged in the crime of indictment, that is, the same "plan of action devised in order to attain [the same] end." *Oxford English Dictionary*, Def. 5.b.

Finally, another word on balancing. *Jenkins* aptly described prior bad acts evidence as "loom[ing] Kong-like" at trial. *Jenkins*, 593 F.3d at 486. Such evidence dominates and overwhelms every decision a jury makes, and instructions intended to mitigate this effect are fig-leaves that cannot hope to hide the propensity evidence glaring into the jury box. *Id.* This view of 404(b) evidence is grounded in more than the musings of appeals court judges, empirical studies confirm that "juries treat prior bad acts evidence as highly probative of the charged crime." *United States v. Gravenhorst*, 377 F.3d 39, 49 (1st Cir. 2004) (Torruella, J., dissenting) (citing Harry Kalven, Jr. & Hans Zeisel, *The American Jury* 160 (1966); Abraham P. Ordover, *Balancing the Presumptions of Guilt and Innocence: Rules 404(b), 608(b) and 609(a)*, 38 Emory L.J. 135 (1989); Roselle L. Wissler & Michael J. Saks, *On the Inefficacy of Limiting Instructions: When Jurors Use Prior Conviction Evidence To Decide on Guilt*, 9 L. & Hum. Behav. 37 (1985)). Of course, the real-world effects of 404(b) evidence do not necessarily dictate the result in a particular case. Whatever the academy says, we have approved of limiting instructions, and other-acts evidence is sometimes admissible despite its prejudicial effect. But I cannot agree that the district court's determination here is entitled to our deference.

The majority credits the district court's finding that the probative value of the other-acts evidence outweighed its prejudicial effect because the government did not have evidence of actual possession. Yet if the prior bad acts admitted below were probative at all they were probative of intent, not actual possession. Thus, the district court's effort at balancing fails on its own terms, leaving the 404(b) testimony to poison the jury's consideration of possession, an element on which the government's evidence, while strong, was not overwhelming. The error, then, was far from harmless.

For these reasons, I would **REVERSE** the district court's 404(b) determination and **REMAND** for a new trial.