NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0057n.06

Nos. 19-2443/2444

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

Jan 28, 2021
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| JEREMY DARNELL MORTON, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) | |

BEFORE:    SUHRHEINRICH, McKEAGUE, and READLER, Circuit Judges.

SUHRHEINRICH, Circuit Judge.

Defendant Jeremy Darnell Morton appeals his conviction and sentence for one count of possession with intent to distribute heroin, as well as the consecutive sentence imposed for violating the terms of his supervised release.

**I.**

The events leading to Morton's conviction for possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 851 are recounted in the district court's written opinion denying Morton's motion to suppress, which we incorporate by reference here. Briefly: Morton was implicated in a series of murders in Muskegon Heights, Michigan in 2015. While executing a search warrant at a Quality Inn room where Morton and his cohorts were suspected to be hiding out, officers stopped Morton, who had just left the Quality Inn and walked to a nearby Comfort Inn, and patted him down for weapons. They found only cash ($8,380.76).

The officers then handcuffed Morton, placed him in the back of a police car, and drove back to the Quality Inn. Morton remained there while the officers executed the search warrant at the Quality Inn. Meanwhile Detective Jason Hartman reviewed the surveillance video of the Comfort Inn and found that Morton had recently visited the men's bathroom twice. He then searched the bathroom and discovered ten grams of heroin in a toilet tank (Morton's latent prints were later lifted from the tank lid). Morton was arrested and charged with drug crimes. Before trial he moved to suppress the cash, claiming that the officers lacked probable cause to arrest him without a warrant. After conducting an evidentiary hearing, the district court denied Morton's motion, concluding that the seizure "was justified as a *Terry* stop to allow other officers to execute the search warrant without tipping off the hotel room occupants." Later, the district court added another rationale: that "based on the facts that were known to the officers at the time they seized Morton, they had probable cause to believe that he participated in a conspiracy to commit murder." Therefore, "the subsequent seizure of the cash from Morton—taken while he was detained—would not violate the Fourth Amendment."

The court also denied Morton's motion to exclude other acts evidence of a 2008 federal conviction for distributing cocaine base.

The jury convicted him of the count. After classifying him as a career offender based on two prior convictions, the district court sentenced Morton to the bottom of the applicable Guidelines range: 262 months. After that, the district court revoked Morton's supervised release because the present crime violated the terms. The court imposed a consecutive sentence at the bottom of the guidelines range: 24 months.

Morton appeals.

**II.**

**A.**

At sentencing the district court found that Morton qualified as a career offender based on his prior drug-trafficking conviction under 21 U.S.C. § 841 and a prior conviction for delivery/manufacture of cocaine under Michigan Compiled Laws § 333.7401. This gave him a guidelines range of 262 to 327 months. The district court sentenced him at the bottom of that range.

On appeal, Morton reiterates the argument he made below, namely that his two prior drug offenses are not "controlled substance offenses" under U.S.S.G. § 4B1.2(b) because both the Michigan and federal offense define the term "delivery" to include attempted offenses, which, following this Court's recent decision in *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) (en banc) (per curiam), are not covered by § 4B1.2(b). However, as he implicitly concedes in his reply brief, this court recently rejected that argument in *United States v. Thomas*, 969 F.3d 583, 585 (6th Cir. 2020) (per curiam), *cert. denied*, No. 20-6282, 2021 WL 78377 (Jan. 11, 2021); *see also United States v. Garth*, 965 F.3d 493, 496–98 (6th Cir. 2020) (same; applying Tennessee law). As *Thomas* explains, the logic of *Havis* does not apply where an attempted action (here attempted transfer) constitutes a completed crime (delivery). *Thomas*, 969 F.3d at 585. Both statutes qualify as controlled-substance offenses under U.S.S.G. § 4B1.2, and the district court properly relied on them to classify Morton as a career offender.

**B.**

Next, Morton claims that the district court erred in denying his suppression motion. As he did below, Morton contends that the cash should have been suppressed as the fruit of an illegal search and seizure because the officers lacked probable cause to arrest him without a warrant. The

government disagrees, arguing that the district court correctly determined that the officers had probable cause to arrest Morton for conspiracy to commit murder. The government further claims that the interaction finds support as a permissible *Terry* stop, followed by a reasonable detention while the search warrant was executed. It also throws in the attenuation doctrine for good measure.

Notwithstanding these meritorious arguments, we think that harmless error sufficiently resolves the issue here. Even if the admission of the large amount of cash was unduly prejudicial because it is highly suggestive of drug trafficking rather than personal use, the government offered other convincing evidence to support the conviction for possession with intent to distribute. An expert witness on heroin trafficking testified that the amount and packaging were consistent with distribution, not personal use. Specifically, the expert stated that user quantity is about one-tenth of a gram, whereas the heroin found in the toilet tank was about 100 doses. Thus, the admission of the cash did not affect the outcome. *See United States v. Copeland*, 51 F.3d 611, 615 (6th Cir. 1995) (citing Fed. R. Crim. P. 52).

## C.

Over Morton's objection, the district court allowed the government to offer evidence of his 2008 federal conviction for distributing cocaine base as proof of intent to distribute heroin. Thus, at trial, Morton stipulated that he sold cocaine base to a confidential informant on three occasions in 2008: the sale of 1.07 grams in two plastic baggies for $150 on May 8, 4.01 grams in four small plastic baggies for $300 on May 29, and 5.34 grams in eight plastic baggies for $500 on June 4.

The district court held that the evidence was admitted "for a proper purpose, that is, intent to distribute." Because defense counsel indicated that Morton's intent to distribute would be an issue at trial, the district court reasoned that:

> [T]o the extent that the defendant has a history, I think that's highly probative if
> indeed the jury can come to the conclusion that it was Mr. Morton who possessed

the drugs at issue in this case, the question then becomes what he intended to do with them, and the fact that he has a history of distribution of crack cocaine to undercover police agents, it seems to me, is highly probative of what was going on, as far as this Indictment is concerned.

On appeal Morton argues that his "prior conviction for three separate sales of cocaine to an agent prejudicially establish propensity, and the limited probative value of his prior convictions [sic] is substantially outweighed by the danger that the jury will convict him because he is a bad person with a criminal record."

We review evidentiary rulings under the familiar abuse of discretion standard, and "a trial judge is accorded broad discretion in determining the admissibility of bad acts evidence under Rule 404(b)." *United States v. Dunnican*, 961 F.3d 859, 874 (6th Cir. 2020) (alteration and citation omitted); *United States v. Mandoka*, 869 F.3d 448, 456–57 (6th Cir. 2017). "Before admitting prior acts evidence, the district court must determine that the evidence is admissible for a proper purpose and that the probative value of the evidence outweighs its potential prejudicial effects." *United States v. Ismail*, 756 F.2d 1253, 1259 (6th Cir. 1985). "This court has repeatedly recognized that prior drug-distribution evidence is admissible under Rule 404(b) to show intent to distribute." *United States v. Cordero*, 973 F.3d 603, 621 (6th Cir. 2020) (quoting *United States v. Hardy*, 643 F.3d 143, 151 (6th Cir. 2011)). Still, to be sufficiently probative of intent, the prior drug distribution evidence "must be substantially similar and reasonably near in time to the specific intent offense at issue." *Id.* (internal quotation marks, alterations, and citation omitted).

Although the 2008 conviction involved individual portions of cocaine base and police in the current case found only one plastic baggie, that bag contained over ten grams of heroin. As Detective Hartman testified, the latter bulk distribution amount is consistent with the former distribution activity. *Cf. id.* at 621–22 (prior drug scheme was related to charged cocaine scheme

in that it "involved narcotics distribution, as opposed to the purchase and use of narcotics for personal use"). Thus, as Morton admits, the evidence was substantially similar.

Moreover, we have repeatedly held that "the prior act need not be identical in every detail to the charged offense." *Id*. at 623 (internal quotation marks and citation omitted). In *Ismail*, we allowed prior acts evidence of cocaine and hashish distribution to prove the charged offense of heroin distribution. 756 F.2d at 1259; *cf. United States v. Ray*, 549 F. App'x 428, 434 (6th Cir. 2013) (prior possession and distribution of small quantities of crack cocaine held admissible in prosecution for possession with intent to distribute a significant quantity of cocaine). "We have also held that there is no definitive set of years that may separate a prior act and the offense charged." *See United States v. Thompson*, 690 F. App'x 302, 308 (6th Cir. 2017) (internal quotation marks and citation omitted) (holding two and four-year-old arrests for prior associations with possessing and distributing marijuana were evidence of intent, and not too distant temporally); *United States v. Ayoub*, 498 F.3d 532, 548 (6th Cir. 2007) (four-year-old drug-distribution arrest was admissible); *United States v. Love*, 254 F. App'x 511, 516 (6th Cir. 2007) (eight-year-old arrest for cocaine trafficking held probative of charge for conspiracy to traffic cocaine). Given that Morton was incarcerated from 2008 through 2012, the seven-year span between the prior acts evidence and the charged offense was not too remote.

Morton claims, because the evidence is "so similar," that "any jury would make the unfairly prejudicial inference that Morton must be guilty again now because of his criminal record for distribution." But the district court recognized that the evidence was prejudicial and cured any injury by instructing the jury to consider this evidence "only as it relates to the government's claim on the defendant's intent." The court included the same instruction after closing arguments when it instructed the jury. Hence, with proper jury instructions mitigating the risk, the 2008 conviction

evidence was not "unfairly" prejudicial. *See United States v. Asher*, 910 F. 3d 854, 862 (6th Cir. 2018); Fed. R. Evid. 403. In short, the district court did not abuse its discretion in admitting the 2008 conviction. *See Hardy*, 643 F.3d at 153 (finding no abuse of discretion where district court found that that the probative value of prior acts evidence was not outweighed by its prejudicial effect and "gave two strong cautionary instructions to the jury").

One final point: Morton claims that the admission of the prior acts caused the same kind of unfair prejudice as the admission of a prior felony conviction in a felon in possession case despite the defendant's stipulation. *See Old Chief v. United States*, 519 U.S. 172, 191–92 (1997) (requiring admission of a defendant's stipulation to a prior felony conviction in a felon in possession case). We rejected this argument in *United States v. Bilderbeck*, 163 F.3d 971, 977–78 (6th Cir. 1999). There, we held that even after *Old Chief*, prior acts evidence remains admissible to prove specific intent even if the defendant stipulates to intent. *Id.* And Morton did not stipulate to intent. In addition, as the government points out, even if *Old Chief* applied, it would require a stipulation, not an exclusion. Again, the district court did not abuse its discretion in admitting the 2008 conviction.

**D.**

Next, Morton, who is African American, claims that the jury venire was not random, resulting in a venire panel that was not a fair cross-section of the community because no African Americans were on the jury, and that this violated the Jury Selection and Service Act ("JSSA"), 28 U.S.C. § 1861, *et seq.*, the Sixth Amendment, and the Fifth Amendment's Equal Protection Clause. Morton concedes on appeal that he failed to timely preserve the issue, so plain error review applies. Under that standard, he must show (1) a trial error, (2) that was plain, (3) that affected the defendant's substantial rights, and (4) that "seriously affect[ed] the fairness, integrity or public

reputation of the judicial proceedings." *United States v. Olano*, 507 U.S. 725, 733–36 (1993) (internal quotation marks and citation omitted).

To establish a Fifth Amendment equal protection violation, a defendant must show not only that the group allegedly excluded from the jury was a distinct class, but also prove the degree of underrepresentation, and establish that the selection procedure was susceptible to abuse or was not racially neutral. *United States v. Ovalle*, 136 F.3d 1092, 1104 (6th Cir. 1998). To show a violation of the fair-section component of the JSSA and Sixth Amendment, which "are analyzed identically," *Holmes v. United States*, 281 F. App'x 475, 480 (6th Cir. 2008), a defendant must show that systematic exclusion of a distinctive group in the jury-selection process caused an unreasonable underrepresentation of African Americans in jury venires as compared to their presence in the community. *Duren v. Missouri*, 439 U.S. 357, 364 (1979); *Holmes*, 281 F. App'x at 480.

Morton has not made these showings because he has not offered any factual evidence of a systematic problem with the jury pool selection process. His reliance on *Ambrose v. Booker,* 684 F.3d 638, 640–41 (6th Cir. 2012), and *Garcia-Dorantes v. Warren*, 801 F.3d 584, 600 (6th Cir. 2015), is unavailing because those considered Kent County Circuit Court's jury selection process, not the Western District of Michigan's. In other words, he has not shown error (let alone plain error), so there is no basis for reversal.

Morton suggests that his lawyer's failures warrant a second chance and requests the opportunity to develop the record on remand. However, the proper vehicle to pursue that issue is through an ineffective assistance of counsel claim as part of a collateral proceeding "after the parties have had the opportunity to develop an adequate record on the issue." *United States v. Williams*, 612 F.3d 500, 508 (6th Cir. 2010) (citation omitted).

**E.**

At the close of the government's case, Morton moved for judgment of acquittal on the ground that no witness had actually identified Morton. Over Morton's objection, the district court let the government reopen its case[1] and have Detective Hartman identify Morton. Morton claims that this is an abuse of discretion because it "imbue[d] the evidence with distorted importance" and left Morton powerless to challenge Hartman's identification "without opening the door to the homicide evidence."

This contention is without merit. As the district court noted, Morton is seen in the surveillance video of the Comfort Inn. Furthermore, Morton stipulated to admissibility of the video as well as his fingerprint card. Given these stipulations, it was not unreasonable for the government to assume that identity was not in issue. Finally, the reopening occurred before Morton had presented any evidence, minimizing any prejudice. *See United States v. Blankenship*, 775 F.2d 735, 741 (6th Cir. 1985) (stating that any prejudice was "unlikely" where the district court allowed the government to reopen proofs after it had rested its case in chief but before the defendant had presented any evidence). And Morton "could not have been surprised by the evidence" since it was merely a "positive identification" of him. *See id*. Morton fails to explain, and we fail to see, how he was deprived of his ability to argue identity without "opening the door" to the homicide investigation, simply because Hartman identified him shortly after the government had rested its case. In short, because Morton did not suffer any prejudice by the late witness identification, the district court did not abuse its discretion in reopening the government's case.

---

[1] The district court would have denied the motion anyway: "Concerning [the] identity of the defendant, defense is correct that no witness pointed to Mr. Morton during the course of the trial; however, the video shows the individual that the officers confronted in the hallway of the Comfort Inn. And in the Court's judgment, that alone is sufficient to allow the case to be presented to the jury for decision."

**F.**

At sentencing, the district court explained that a 262-month term of imprisonment was necessary based on the 18 U.S.C. § 3553(a) factors: Morton was a career offender, his prior drug offenses "indicate[d] that Mr. Morton has absolutely no respect for the law"; and that "as far as drugs are concerned, he does what he wants, when he wants to do it, and no sentence imposed by another court has managed to reform [his] conduct as it relates to controlled substances." The court stated that it "ha[d] very grave concerns about the protection of the public from further crimes of this defendant" and was "mindful of general deterrence of others who contemplate trafficking in heroin," especially given that the Western District of Michigan "ha[s] a major opioid abuse problem," to which Morton "obviously was contributing to." Still, it sentenced Morton to the low end of the advisory guideline range, despite the government's request for a sentence at or near the maximum of the statute.

After sentencing Morton on the heroin charge, the district court turned to the supervised release violation. Morton had been incarcerated from 2008 until 2012 after being convicted of possession with intent to distribute cocaine base.[2] (This conviction was the prior acts evidence introduced at trial.) The district court found that Morton's heroin conviction constituted a supervised release violation of the prior 2008 conviction and sentenced Morton to the 24 months, at the bottom of the advisory guideline range of 24 to 30 months. The court rejected Morton's request to impose the sentence concurrently, stating that "Mr. Morton committed the new offense while on supervised release. This is a clear major violation of the trust placed in Mr. Morton while he was on supervised release by the Court. The Court finds that a consecutive 24-month sentence

---

[2] Morton was released on October 22, 2012. On May 3, 2013, he spent six weeks in jail for using marijuana and submitting diluted samples. On June 12, 2014, his supervised release was revoked. He was released on July 1, 2014. On September 21, 2015, a supervised release violation was filed based on his commission of the crime at issue and other infractions. Thus, the revocation at issue was Morton's second. Morton does not contest these allegations.

is appropriate under the circumstances." After asking the parties if they had any "legal objection" to the sentence imposed, the court added that it "recognize[d] its discretion in giving a consecutive or concurrent sentence," but felt that because "the breach of trust here [was] a major one," a consecutive sentence was warranted.

On appeal Morton claims that the sentence is procedurally unreasonable because (1) the district court relied on the same sentencing factors it used for the heroin conviction, and (2) the court did not reference U.S.S.G. § 7B1.3(f).

Morton acknowledges that plain error review applies because he failed to object to the sentence when asked. *See United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc). But, as the government argues, this claim also fails under the abuse of discretion standard. *See United States v. Johnson*, 640 F.3d 195, 201 (6th Cir. 2011) (stating that the standard of review for a sentence imposed upon revocation of supervised release is abuse of discretion).

A district court has discretion to order concurrent or consecutive sentences. 18 U.S.C. § 3584(a); *Johnson*, 640 F.3d at 208. "Exercise of that authority, however, is predicated on the district court's consideration of the facts listed in 18 U.S.C. § 3553(a), including any applicable Guidelines or policy statements issued by the Sentencing Commission." *Johnson*, 640 F.3d at 208. (citing 18 U.S.C. § 3584(b)). The pertinent policy statement, U.S.S.G. § 7B1.3(f), provides that:

> Any term of imprisonment imposed upon the revocation of . . . supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of . . . supervised release.

Section 7B1.3(f) is not binding on the district court,[3] but the court "must consider § 7B1.3(f) when it is applicable and may exercise its discretion to apply it when determining whether to impose a consecutive sentence." *Johnson*, 640 F.3d at 208.

The district court properly exercised that discretion. Contrary to Morton's assertion, as *Johnson* makes clear, the court was required to consider the § 3553(a) factors when imposing a concurrent or consecutive sentence, and it did. Not only that, but we have also held that "[w]here the court has just engaged in a lengthy discussion of the sentencing factors in explaining the sentence itself, it is generally clear that the decision to impose a consecutive sentence is based on the same factors." *United States v. Briggs*, 543 F. App'x 583, 584 (6th Cir. 2013) (per curiam) (citing *United States v. Cochrane,* 702 F.3d 334, 346 (6th Cir. 2012)). Although the court did not explicitly reference section 7B1.3(f), it referred to "any guideline policy statements that pertain" to the supervised release violation. This of course includes Section 7B1.3(f), so the reference suffices. *See United States v. King*, 914 F.3d 1021, 1025–26 (6th Cir. 2019) (finding reference to a supervised release violation report that cited section 7B1.3(f) was sufficient even though court did not otherwise cite it). This issue is also without merit.[4]

### III.

The judgment of the district court is **AFFIRMED**.

---

[3] Although "the advisory provision in § 7B1.3(f) of the Sentencing Guidelines appears to make consecutive sentencing in the revocation setting mandatory, we have held repeatedly that the statutory provision controls the determination, making it discretionary and based on the same § 3553(a) sentencing factors that guide the length of sentence." *United States v. Watkins*, 515 F. App'x 556, 559 (6th Cir. 2013) (per curiam) (collecting cases) (footnote omitted).

[4] At oral argument defense counsel asserted that Morton's sentence was procedurally unreasonable because at sentencing he was blindsided by the government when it played a video of Morton in a fight while in the county jail awaiting sentence. Although Morton referenced the sentencing incident in his appellate brief, he did not develop any argument on this basis. Thus, any such claim is forfeited. *See Goff v. Nationwide Mut. Ins. Co.*, 825 F. App'x 298, 305–06 (6th Cir. 2020).