NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0819n.06

No. 07-4496

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Dec 22, 2009**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellee*, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| v. | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| **JAMES P. CARPENTER** | ) | |
| | ) | **O P I N I O N** |
| *Defendant-Appellant*. | ) | |

BEFORE:     **DAUGHTREY, COLE, and GIBBONS, Circuit Judges**.

**COLE, Circuit Judge**.  Defendant-Appellant James P. Carpenter pleaded guilty to eighteen

counts of mail fraud, pursuant to 18 U.S.C. §§ 1341 and 1342, and was sentenced to 108 months in

prison under the Sentencing Guidelines.  Carpenter appeals his sentence.  For the reasons set forth

below, we **AFFIRM**.

## I.  BACKGROUND

### A.     Factual Background

Carpenter incorporated and controlled several Ohio entities that purported to be in the

business of operating, promoting, or underwriting investments in various business ventures.  In

reality, however, between November of 1997 and December of 2001, Carpenter was operating a

"Ponzi" scheme, in which he solicited investments in businesses that were either unprofitable or

unable to pay interest on the promissory notes Carpenter gave to investors as security. Instead, Carpenter used his investors' money for other purposes and solicited additional investments in order to pay interest to earlier investors and prolong the scheme. He also provided guarantees from a number of entities claiming to be insurance companies. But, like the above-mentioned corporations, these insurance companies did not have the capacity, ability, or intent to repay the notes if the corporations defaulted.

Further, Carpenter failed to inform agents and brokers that he was a disbarred attorney, that he previously had been convicted of bank fraud and related offenses, and that he had been previously involved with sales of promissory notes where the ventures had failed. Carpenter was convicted of several crimes in 1991, including federal bank fraud and theft in the State of Ohio. Overall, Carpenter was convicted of aggravated theft on three separate counts. Also, in 2004, he was convicted in Indiana on three separate charges of conspiracy to sell unregistered securities.

On December 14, 2005, a federal grand jury indicted Carpenter on eighteen counts of mail fraud in violation of 18 U.S.C.§§ 1341 and 1342.

**B.    Plea Agreement**

On July 6, 2007, the district court held a change-of-plea hearing, and Carpenter pleaded guilty to all eighteen counts of the indictment pursuant to a written agreement between Carpenter and the Government ("Plea Agreement" or "agreement"). The parties arrived at the terms of the Plea Agreement by examining the 2001 U.S. Sentencing Guidelines Manual and calculated the Total Offense Level as twenty-eight before deducting two points for Acceptance of Responsibility. Additionally, Carpenter and the Government agreed that the court should apply Criminal History

Category II.  The Plea Agreement stated, in relevant part, that "[p]ursuant to Rule 11(c)(1)(A) and

(B) of the Federal Rules of Criminal Procedure":

13.　　Defendant agrees to make restitution . . . for the losses caused by the defendant's conduct . . .

16.　　**Recommendation to Use the Advisory Sentencing Guideline Computation**. . . . [T]he parties agree to recommend that the Court impose a sentence within the range determined pursuant to the advisory Sentencing Guidelines . . . . The parties agree that the appropriate sentence within that range is a period of 78 months . . . . The government will not request a sentencing higher than the advisory Sentencing Guidelines range and the defendant will not request a sentence lower than the advisory Sentencing Guidelines Range.

　　**However, it is agreed that the parties may argue the question as to whether the sentence served by the defendant in Indiana in 2004 . . . should or should not be considered by the court as a credit for time served** . . . .

21.　　**Sentencing Recommendations Not Binding on the Court.**  Defendant understands that the recommendations of the parties will not be binding upon the Court, that the Court alone will decide the applicable sentencing range under the advisory Sentencing Guidelines . . . . Defendant further understands that once the Court has accepted Defendant's guilty pleas, Defendant will not have the right to withdraw such pleas if the Court does not accept any sentencing recommendations made on Defendant's behalf or if Defendant is otherwise dissatisfied with the sentence.

At the change-of-plea hearing, Carpenter acknowledged that he understood the Plea Agreement.

**C.　　Presentence Investigation Report**

Although the Plea Agreement stipulated that an appropriate sentence was seventy-eight

months, the probation officer who wrote the presentence investigation report ("PSR") came to a

different conclusion.  The probation officer determined that Carpenter had eight total criminal history

points, which corresponds to Criminal History Category IV (not Category II, as determined in the

Plea Agreement). The probation officer came to this conclusion because under this Court's precedent, crimes are part of the same scheme or plan only if the offenses were jointly planned or, at a minimum, the commission of one offense necessarily required the commission of another. The probation officer determined that Carpenter's three convictions in 1991 for aggravated theft were separate crimes and warranted eight criminal history points. Accordingly, the probation officer calculated a Guidelines range of ninety-two to 115 months.

The probation officer also noted that, while the Plea Agreement stipulated that there were more than fifty but not more than 250 victims in this case, the indictment charged that there were approximately 300 victims, and the United States Attorney's Office indicated that there were approximately 400 victims. The probation officer recognized that if the court determined there were more than 250 victims, the offense level could be increased by six levels under U.S.S.G. § 2B1.1(b)(2)(C), resulting in a Total Offense Level of twenty-eight and a Guidelines range of 110 to 137 months.

**D.      Sentencing Hearing**

In part, the district court agreed with the PSR. The court concluded that Carpenter's offenses in 1991 were not part of a common scheme but did accommodate Carpenter's request to apply the 2007 U.S. Sentencing Guidelines Manual on this point. Under the 2007 Guidelines, Carpenter's criminal history rendered a Criminal History Category III, rather than IV. The court declined, however, to apply the 2007 Guidelines to the rest of Carpenter's sentence, noting that the 2007 version of the Guidelines could have increased Carpenter's sentence. The court then arrived at a Sentencing Guidelines range of ninety-seven to 108 months.

Explaining that the number of Carpenter's victims is "staggering" and previous incarceration "didn't make a dent on [Carpenter]," the court imposed a within-Guidelines sentence of 108 months. Additionally, the district court considered but rejected Carpenter's argument that he deserved a downward departure or variance due to his medical conditions. As for restitution, the court permitted the parties to submit briefs on the issue and, on March 28, 2008, ordered Carpenter to pay $14,631,221.00.

## II.  ANALYSIS

Carpenter argues that he did not receive the benefit of his bargain under the Plea Agreement and that his sentence is unreasonable. He also argues that the district court's restitution order improperly included amounts related to unindicted conduct. We reject his arguments.

### A.      The Plea Agreement

Carpenter claims that the district court erred by not honoring the agreed-upon sentence of seventy-eight months. Carpenter's argument misses the mark for three reasons. First, Carpenter and the Government signed a plea agreement pursuant to Rule 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure. Rule 11(c)(1)(B) states that "an attorney for the government will . . . recommend, or agree not to oppose the defendant's request, that a particular sentence or sentencing range is appropriate." Fed. R. Crim. P. 11(c)(1)(B). The rule goes on to say that "such a recommendation or request *does not bind the court*." *Id.* (emphasis added). Thus, the text of the rule precludes Carpenter's argument that the Plea Agreement binds the court. Moreover, this Court has held that plea agreements under Rule 11(c)(1)(B) do not bind the court. *See, e.g.*, *United States v. Davidson*, 409 F.3d 304, 310-11 (6th Cir. 2005) (holding that plea agreement under Fed. R. Crim.

P. 11(c)(1)(B) did not bind the court).

Second, the language of the Plea Agreement makes clear that the agreement is not binding on the court. For example, paragraph nineteen of the agreement stated that the court should apply a Criminal History Category II but added that "the Defendant understands . . . that the Court may apply a different Criminal Category other than what the parties have recommended." Similarly, paragraph twenty-one provided that the Plea Agreement did not bind the court and that "the Court alone" would decide both the sentencing range and the sentence to impose. At the change-of-plea hearing, the district court recited these provisions and reiterated that, even if the court did not follow the Government's recommendation, Carpenter still forfeited the right to withdraw his plea. Thus, the Plea Agreement and the district court made clear that the agreement provided a recommendation that did not bind the court.

Third, the party that was bound by the Plea Agreement—the Government—complied with the agreement's terms. Throughout his brief, Carpenter argues that he wants only what he bargained for, but that is what he got. At sentencing, the Government did not argue that the Criminal History Level should be higher than II, nor that the sentence imposed be higher than seventy-eight months. Therefore, we conclude that the Plea Agreement was not breached and that Carpenter received the benefit of his bargain.

**B.     Reasonableness of Carpenter's Sentence**

Next, Carpenter argues that the district court imposed an unreasonable sentence. Sentences imposed under an advisory Sentencing Guidelines regime are reviewed for procedural and substantive reasonableness. *United States v. Webb*, 403 F.3d 373, 383-85 (6th Cir. 2005). We have

held that whether a sentence is procedurally reasonable depends on three factors: (1) whether the district court correctly calculated the applicable Guidelines range and used it as a starting point for its sentence analysis; (2) whether the parties were given the opportunity to argue for sentences they deemed appropriate and the district court made an individualized sentencing decision based upon the facts and § 3553(a) factors; and (3) whether the district court explained its reasoning with enough detail to allow for meaningful appellate review and to give the impression of fair sentencing. *United States v. Bolds*, 511 F.3d 568, 579-80 (6th Cir. 2007). Procedurally reasonable sentences are reviewed for substantive reasonableness under an abuse-of-discretion standard, regardless of whether the sentence is within or outside the Guidelines range. *Gall v. United States*, 552 U.S. 38, 51 (2007). Under an abuse-of-discretion standard, the district court's substantive conclusions about the relative significance of the various sentencing factors is beyond the scope of appellate review. *United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008).

Carpenter argues that his 108-month sentence is greater than necessary to comply with the purposes of 18 U.S.C. § 3553. In particular, Carpenter claims that the district court erred by not considering his previous time served and by failing to consider adequately his poor health.

*1.      Credit for time served*

Carpenter argues that the district court should have granted him credit for the time he served in Indiana for selling unregistered securities. While Carpenter raised this issue in his Sentencing Memorandum, he did not raise it at the sentencing hearing, and the district court did not address the issue. If, however, Carpenter was not entitled to credit for his time served, there is no harm resulting from the district court's failure to address the question. *See United States v. Smith*, 510 F.3d 603,

608 (6th Cir. 2007) ("[A] district court need not explain its reasons for rejecting each argument made by the defendant."). We conclude that the district court did not err because the two provisions on which Carpenter relies, 18 U.S.C. § 3585(b) and U.S.S.G. § 5G1.3, do not apply here.

Under 18 U.S.C. § 3585(b), "[a] defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences" in two situations: "(1) as a result of the offense for which the sentence was imposed; or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense . . . ." In *United States v. Wilson*, the United States Supreme Court held that it is the Attorney General, through the Bureau of Prisons ("BOP"), and not the district court, who has the authority to grant credit for time served. 503 U.S. 329, 333 (1992) (construing 18 U.S.C. § 3585(b)); *see also United States v. Sylvester*, 289 F. App'x 860, 867 (6th Cir. 2008) (applying *Wilson* and rejecting defendant's argument that the district court should have considered his time served).

In addition, Carpenter does not qualify for a departure under U.S.S.G. § 5G1.3(b) or (c) because he seeks credit for a fully *discharged* conviction. U.S.S.G. § 5G1.3 provides that a district court may effect a downward departure for an *undischarged* sentence but does not provide for a downward departure for a *discharged* sentence. *See United States v. Mohler*, Nos. 97-3586/97-3671, 1999 U.S. App. Lexis 16211, at *10-11 (6th Cir. July 9, 1999) (per curiam) ("We find it is neither irrational nor arbitrary for § 5G1.3(b) to mandate that a sentence be imposed concurrently with any undischarged term of imprisonment . . . but not to require that a credit be granted when the defendant completed the term of imprisonment . . . ."). Moreover, as the PSR indicates, the state crimes for which Carpenter served time and now seeks credit were not a basis for increasing his offense level,

meaning that he cannot qualify for a downward departure for his discharged sentence. *See* U.S.S.G. § 5K2.23 (referring to § 5G1.3(b) and requiring that a prior offense be the basis for an increase in offense level for an offender to receive credit for a discharged sentence). Thus, the district court did not err by not giving Carpenter credit for time served.

### 2. *Carpenter's medical condition*

Carpenter also claims that the district court did not adequately consider his poor health and, therefore, his sentence should be reduced under either 18 U.S.C. § 3553(a)(2)(D) or U.S.S.G. § 5H1.4. Section 3553(a)(2)(D) provides that a district court must consider "the need for the sentence imposed--to provide the defendant with needed . . . medical care." Similarly, U.S.S.G. § 5H1.4 allows a district court to depart for "extraordinary physical impairment." Carpenter argues that his 108-month sentence, given his health, is effectively a life sentence and his family is better equipped than is the BOP to address his medical needs.

Carpenter does have medical problems. He underwent a kidney transplant in January 1985; suffers from high blood pressure, Hepatitis C, and cataracts; and developed skin cancer several years ago. At the sentencing hearing, however, the district court acknowledged Carpenter's poor health and concluded that the BOP's facilities are equipped to treat him. Once the court considered Carpenter's health conditions, it had discretion to vary or depart from the Guidelines range because of those conditions and decided not to do so. *See United States v. Clark*, 469 F.3d 568, 571 (6th Cir. 2006) (affirming district court's rejection of defendant's argument that his health conditions warranted a below-Guidelines sentence); *United States v. Bostic*, 371 F.3d 865, 873-74 (6th Cir. 2004) (applying plain-error standard to district court's decision to depart for medical infirmity and

age). As an initial matter, we note that a district judge's decision denying a downward departure from the Sentencing Guidelines is not reviewable, provided that the judge understood his discretion to depart downward. *United States v. Puckett*, 422 F.3d 340, 345 (6th Cir. 2005). Here, because the judge understood his discretion, his decision not to depart is not reviewable.

Of course, Carpenter also argues that the district court should have varied from the Guidelines range under 18 U.S.C. § 3553(a)(2)(D). The district court did not abuse its discretion. Carpenter was only fifty-seven years old when he was sentenced, and while he does have health problems, he has offered no evidence that the BOP is unable to provide adequate medical care. Thus, we hold that the district court did not abuse its discretion by not reducing Carpenter's sentence due to his medical conditions and conclude that Carpenter's sentence is reasonable.

## C. Restitution

Finally, Carpenter argues that, by setting restitution at $14,631,221.00, the district court exceeded its authority under 18 U.S.C. § 3663. "This Court reviews the district court's order of restitution for abuse of discretion, but reviews the district court's application of a statute de novo." *United States v. Blanchard*, 9 F.3d 22, 24 (6th Cir. 1993). Here, 18 U.S.C. § 3663, known as the Mandatory Victims' Act ("MVA"), sets forth the basis for determining restitution and provides that the district court "may require [a] defendant" to "pay an amount equal" to "the value of the property" lost. 18 U.S.C. § 3663(b)(1)(B).

Carpenter relies on *Hughey v. United States*, 495 U.S. 411 (1990), to argue that a restitution order must be limited to the losses caused by the offense of conviction. In particular, Carpenter argues that the district court's restitution calculation includes checks mailed to Lomas de la Bara

Development, Inc ("Lomas") and Serengeti Diamonds U.S.A., Inc. ("Serengeti")—companies that were not included in the counts for mail fraud—and, therefore, the district court's restitution order improperly included conduct outside the scope of the indictment. In *United States v. Jewett*, however, this Court acknowledged that the amended version of 18 U.S.C. § 3663(a)(2) "expand[ed] the definition of 'victim' in cases such as mail fraud" and "authorize[d] restitution . . . for all losses attributable to [the defendant]'s scheme to defraud." 978 F.2d 248, 252 (6th Cir. 1992). Under *Jewett*'s reasoning, *Hughey* does not apply to the amended version of the statute because restitution orders are no longer limited to the harm caused by the particular offense of conviction. In fact, on several occasions since *Jewett*, this Court has affirmed restitution orders that take into account losses attributable to a fraudulent scheme as a whole. *See, e.g.*, *United States v. Coffee*, 110 F. App'x 654, 656 (6th Cir. 2004) ("[R]estitution is authorized for all losses attributable to [the defendant]'s scheme . . . . Restitution is not confined to the harm caused by the particular offense of conviction.").

The indictment listed Lomas and Serengeti as companies that Carpenter used as part of his "scheme to defraud." It was through these companies, among others, that Carpenter swindled his victims. Under 18 U.S.C. § 3663(a)(2), "any person directly harmed by the defendant's criminal conduct in the course of the scheme" is a victim. Accordingly, the restitution order properly "included all losses attributable to [Carpenter]'s scheme to defraud," *Jewett*, 978 F.2d at 252, and we affirm the restitution order.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** Carpenter's 108-month sentence and the district court's restitution order.