NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0424n.06

No. 23-5733

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

FILED
Oct 24, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| JOSHUA DWAYNE MABERY, | ) | TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | OPINION |

BEFORE: SUTTON, Chief Judge; LARSEN and MURPHY, Circuit Judges.

MURPHY, Circuit Judge. A jury convicted Joshua Mabery of conspiring to distribute methamphetamine and possessing this drug with the intent to distribute it. He raises a single challenge to these convictions on appeal, claiming that the district court should have excluded evidence that he threatened two of his accomplices. But Mabery did not object to this evidence in the district court. And he has not shown that the court committed plain error by admitting it.

So Mabery turns to challenging his 262-month prison sentence. He argues that the district court miscalculated his guidelines range by relying on the higher base offense level for "pure" methamphetamine. Yet we have repeatedly rejected identical claims. He next argues that the court should not have enhanced his base offense level for making credible threats of violence and for possessing a firearm during his offenses. But he cannot overcome the deferential standard of

review that applies to these factual claims. Lastly, while Mabery calls his within-guidelines sentence substantively unreasonable, it fell well within the court's discretion. We affirm.

I

Mabery ran an illegal methamphetamine business in Elizabethton, Tennessee. In early 2021, he met Michael Lyons when making a delivery to someone else at Lyons's house. After the two started talking while smoking meth together, they learned that they "were competitors in the same business" of selling this drug. Lyons Tr., R.235, PageID 2535. Mabery and Lyons decided to cooperate with each other by sharing sources of supply (among other ways). Lyons regularly bought his methamphetamine from a source in Knoxville.

In February 2021, Mabery was struggling to find a supplier. He and Lyons agreed to combine their money (about $7,000 in all) to get a cheaper price from Lyons's Knoxville supplier. On February 24, Mabery drove to Knoxville with Lyons and an acquaintance, Ashley Taylor. Lyons took a handgun with him during this trip and put it in the passenger-side door of Mabery's car. Taylor also carried a gun in her purse. They met up with Lyons's supplier at a Red Roof Inn near Knoxville. While there, they bought 532.8 grams of "pure" methamphetamine. Keith Tr., R.236, PageID 2713. They then headed back to Elizabethton.

As it turns out, a DEA task force had been tracking Mabery's phone for some time. While investigating a different organization that was shipping methamphetamine into eastern Tennessee, this task force uncovered text messages discussing drug sales on a phone linked to Mabery. Task-force officers subpoenaed this phone's subscriber data and began to track it. So the officers were following Mabery, Lyons, and Taylor as they drove to the drug transaction at the Red Roof Inn. The officers looked on as Lyons walked out of this hotel with "a package" and got back into Mabery's car for the return trip. Sayler Tr., R.236, PageID 2736.

2

The task force asked the Tennessee Highway Patrol to stop Mabery's car on its way back to Elizabethton. A state trooper pulled the car over for following another vehicle too closely. Mabery consented to a search. Officers uncovered the methamphetamine that Mabery and Lyons had just bought. They also found Taylor's gun in her purse and Lyons's gun in the car door.

The federal government charged Mabery with three counts. It charged him with conspiring to distribute at least 50 grams of methamphetamine from about September 2020 to September 2021. *See* 21 U.S.C. §§ 841(b)(1)(A)(viii), 846. It charged him with possessing at least 50 grams of methamphetamine with the intent to distribute this drug on February 24, 2021. *See id.* § 841(a)(1), (b)(1)(A)(viii). And it charged him with possessing a firearm in furtherance of the drug trafficking on this date. *See* 18 U.S.C. § 924(c)(1)(A).

Mabery stood trial. A jury convicted him of the two drug counts but acquitted him of the firearm count. The district court calculated his guidelines range as 262 to 327 months' imprisonment. It imposed a 262-month sentence.

II

On appeal, Mabery raises one evidentiary objection and several sentencing objections.

A. Evidentiary Objection

Mabery first argues that the government wrongly introduced evidence that he threatened Lyons and Taylor while the three accomplices were out on bond after their arrests. Before trial, the government notified the court of its intent to offer this "other acts" evidence under Federal Rule of Evidence 404(b)(2). On the first day of trial, the district court asked Mabery's counsel if he objected to the government's use of this evidence. Tr., R.234, PageID 2288. Counsel responded that he had "no issue" with it. *Id.*

Two witnesses testified about Mabery's threats. Lyons testified that he learned a few weeks after their release that Mabery thought Lyons "had set him up." Lyons Tr., R.235, PageID 2653. Lyons contacted Mabery to discuss the issue. Mabery conceded that he had wanted to "take care" of Lyons. *Id.* When Lyons tried to "smooth the situation over," their conversation turned to the third accomplice: Taylor. *Id.*, PageID 2654. Mabery opined that "if [Lyons] didn't do it," "it must have been" Taylor. *Id.* Apart from Lyons, Ashley Wilson (a woman who bought drugs from Mabery) also testified about other threats that Mabery made against Taylor. According to Wilson, Mabery and Lyons noted that they "were interested in [Wilson] luring out Ashley Taylor for them to find" and that they "wanted [Taylor] beat up[.]" Wilson Tr., R.235, PageID 2517.

Mabery now argues that the district court wrongly admitted this testimony under Federal Rule of Evidence 404(b)(2). But he has forfeited this claim because he did not challenge the evidence in the district court. *See United States v. Hardy*, 643 F.3d 143, 150 (6th Cir. 2011); *United States v. Cowart*, 90 F.3d 154, 157 (6th Cir. 1996). We still "may" consider Mabery's arguments if he can meet the demanding plain-error test. Fed. R. Crim. P. 52(b); Fed. R. Evid. 103(e); *United States v. Ramamoorthy*, 949 F.3d 955, 962 (6th Cir. 2020). This test requires him to show, among other things, that the district court committed an "obvious" mistake in admitting the evidence. *United States v. Henry*, 545 F.3d 367, 376 (6th Cir. 2008) (citation omitted).

Mabery has not met this element. The Federal Rules of Evidence prohibit the government from using evidence of a different "crime, wrong, or act" to prove a defendant's "character" and show that the defendant acted "in accordance with the character" for the charged crime. Fed. R. Evid. 404(b)(1). But the government may use this evidence for "another purpose," such as to show the defendant's "knowledge." Fed. R. Evid. 404(b)(2). We have told district courts to ask three questions when deciding on the admissibility of this "other acts" evidence under Rule 404(b)(2).

4

*See Hardy*, 643 F.3d at 150.  First, did enough evidence exist that the other act occurred?  Second, did the government use the evidence for a proper purpose?  And third, did any unfair prejudice from the evidence substantially outweigh its probative value under Rule 403's balancing test?  *Id.*

Mabery does not raise any arguments about the second of these questions.  He thus concedes that the government admitted his threats against Lyons and Taylor for a proper purpose.  Indeed, we have "consistently" held that Rule 404(b)(2) allows the government to introduce evidence of a defendant's threats against "trial witnesses" to help show the defendant's "consciousness of guilt."  *United States v. Cordero*, 973 F.3d 603, 619 (6th Cir. 2020).  These threats tend to signal that criminal defendants believe they have only a "weak" defense to the charged crimes.  *United States v. Mendez-Ortiz*, 810 F.2d 76, 79 (6th Cir. 1986) (citation omitted).

Mabery instead raises arguments about the first and third questions.  He starts by criticizing the district court for failing to expressly find that sufficient evidence existed that he made the alleged threats.  Yet district courts need not formally find by a preponderance of the evidence that the other act occurred before admitting "other act" evidence; rather, they may admit this evidence as long as it would permit a jury to "reasonably conclude that the act occurred and that the defendant was the actor."  *Huddleston v. United States*, 485 U.S. 681, 689 (1988); *see Hardy*, 643 F.3d at 150; *United States v. Trujillo*, 376 F.3d 593, 605 (6th Cir. 2004).  And a witness's testimony that a defendant committed the act generally satisfies this test even if the witness has credibility problems.  *See United States v. Thompson*, 690 F. App'x 302, 307 (6th Cir. 2017); *United States v. Johnson*, 458 F. App'x 464, 470 (6th Cir. 2012).  The evidence against Mabery thus sufficed because two witnesses alleged under oath that he made the threats.  Lyons testified that Mabery said he wanted to "take care" of Lyons.  Lyons Tr., R.235, PageID 2653.  And Wilson testified that Mabery conveyed a desire to "beat up" Taylor.  Wilson Tr., R.235, PageID 2517.

Mabery next criticizes the district court for failing to engage in an on-the-record Rule 403 balancing or to issue a limiting instruction about the proper use of this evidence. Admittedly, we "prefer[]" that district courts "make an explicit finding" about their balancing. *United States v. Myers*, 123 F.3d 350, 363 (6th Cir. 1997). But we refuse to find error when a district court fails to expressly balance the probative value of evidence against its prejudicial effect if the defendant does not request that balancing. *See Cowart*, 90 F.3d at 157; *see also United States v. Gordon*, 493 F. App'x 617, 625 (6th Cir. 2012); *United States v. McCaskill*, 202 F. App'x 70, 77 (6th Cir. 2006). Likewise, a court does not typically need to give a limiting instruction on its own. *See United States v. Fraser*, 448 F.3d 833, 839 n.3 (6th Cir. 2006); *United States v. Blount*, 479 F.2d 650, 651 (6th Cir. 1973). After all, Mabery's trial counsel may well have strategically declined to request that instruction to avoid emphasizing this otherwise isolated testimony. *See United States v. Cobbs*, 233 F. App'x 524, 539 (6th Cir. 2007). Besides, the court reiterated to the jury at the end of the case that Mabery was "only on trial for the particular crimes charged in the superseding indictment." Tr., R.236, PageID 2848. At day's end, then, Mabery's failure to object to this "threat" evidence all but dooms his claim on appeal. He has not identified any "obvious" errors in how the court admitted the evidence. *Henry*, 545 F.3d at 376 (citation omitted).

## B. Sentencing Objections

Mabery next challenges his 262-month sentence as both procedurally and substantively unreasonable. His challenges all lack merit.

### 1. Procedural Challenges

Mabery argues that the district court made three mistakes when calculating his guidelines range. He claims that the court started with an excessive base offense level by accepting the

guideline distinction between "mixed" and "pure" methamphetamine. And he claims that the court wrongly imposed two enhancements for threatening violence and possessing a firearm.

a. *Base Offense Level*. The drug-offense guideline ties a defendant's base offense level to the quantity of drugs involved in a crime. *See* U.S.S.G. § 2D1.1(a)(5), (c). This guideline treats "pure" (or "actual") methamphetamine more harshly than a methamphetamine "mixture." *See id.* § 2D1.1(c), Notes to Drug Quantity Table (A)–(B). It sets a 10:1 ratio between these two types of drugs. For example, the guideline imposes a base offense level of 38 for 45 kilograms of a methamphetamine mixture and the same offense level for just 4.5 kilograms of pure methamphetamine. *Id.* § 2D1.1(c)(1). Because most suppliers now have access to pure methamphetamine, Mabery suggests that this distinction no longer makes sense. He thus argues that district courts must always use the base offense level for a methamphetamine mixture.

His argument conflicts with our precedent. We have repeatedly rejected the claim that a district court wrongly adhered to this guideline's treatment of pure methamphetamine. *See United States v. Heard*, 2024 WL 1049480, at *6 (6th Cir. Mar. 11, 2024) (collecting cases); *see, e.g.*, *United States v. Allen*, 93 F.4th 350, 359–60 (6th Cir. 2024); *United States v. Kennedy*, 65 F.4th 314, 326 (6th Cir. 2023); *United States v. Mosley*, 53 F.4th 947, 965 (6th Cir. 2022). As we have explained, just because a district court now has discretion to vary from a guideline on policy grounds does not mean that the court commits an error by sticking to the guideline. *See United States v. Lynde*, 926 F.3d 275, 280–81 (6th Cir. 2019). These decisions bind us here.

b. *Firearm Possession*. The drug-offense guideline imposes a two-level enhancement "[i]f a dangerous weapon (including a firearm) was possessed[.]" U.S.S.G. § 2D1.1(b)(1). As both parties recognize, the commentary to this guideline says that the enhancement applies "if the weapon was present, unless it is clearly improbable that the weapon was connected with the

7

offense." *Id.* § 2D1.1 cmt. n.11(A). We have read the guideline to adopt a "'burden-shifting' approach." *Heard*, 2024 WL 1049480, at \*5 (quoting *Kennedy*, 65 F.4th at 318). The government must prove that the defendant actually or constructively possessed a weapon during the offense or any "relevant conduct" to the offense. *United States v. McCloud*, 935 F.3d 527, 531 (6th Cir. 2019) (citation omitted); *see United States v. Barron*, 940 F.3d 903, 911 (6th Cir. 2019). The burden then shifts to criminal defendants to prove that they possessed the weapon for a reason unconnected to the offense (or the relevant conduct). *See McCloud*, 935 F.3d at 531.

On appeal, Mabery challenges the district court's conclusion that the government met its initial burden to prove that he possessed a gun during his drug conspiracy. We treat this conclusion as a factual finding that we review for clear error. *See United States v. Johnson*, 344 F.3d 562, 567 (6th Cir. 2003). To prevail under this deferential clear-error test, Mabery must show that the court's finding was not even a "plausible" view of the evidence. *United States v. O'Lear*, 90 F.4th 519, 536 (6th Cir. 2024) (citation omitted). Mabery tries to satisfy this burden by pointing out that the jury acquitted him of possessing the two guns found in his car during the Knoxville trip. At trial, Lyons confessed to possessing the gun found in the car door, and Taylor confessed to possessing the gun found in her purse. And while one conspirator's possession of a gun can sometimes be "attributable" to a coconspirator if the possession was "reasonably foreseeable," *Barron*, 940 F.3d at 912 (citation omitted), the government makes no such claim here.

But Mabery's argument has a basic problem: the district court did not impose the enhancement based on these two handguns. It instead relied on different weapons. Among other evidence, Wilson (the customer who bought drugs from Mabery) testified that she traveled with him in the spring of 2021 and watched him engage in many drug deals. During these trips, Mabery sometimes "kept a handgun" in a compartment in his car where he also stashed his drugs. Wilson

Tr., R.235, PageID 2514. This testimony—which Mabery ignores—sufficed for the district court's possession finding under our deferential standard of review.

c. *Credible Threat of Violence*. The drug-offense guideline imposes another two-level enhancement if a defendant "used violence, made a credible threat to use violence, or directed the use of violence[.]" U.S.S.G. § 2D.1(b)(2). We have described a "credible threat to use violence" as analogous to a "true threat" for First Amendment purposes. *See United States v. Roberson*, 2024 WL 2154285, at *4 (6th Cir. May 14, 2024). A defendant must have expressed a "communicated intent to inflict harm" (the ordinary meaning of threat). *Id.* (quoting *Black's Law Dictionary* 1618 (9th ed. 2009)). And this expressed intent to injure must have been "[c]apable of being believed" by the listener (the ordinary meaning of credible). *Id.* (quoting *American Heritage Dictionary of the English Language* 427 (5th ed. 2011)); *see also United States v. Pineda-Duarte*, 933 F.3d 519, 522, 526 (6th Cir. 2019) (collecting circuit cases).

The district court imposed this enhancement based on Mabery's threats against Taylor. Mabery challenges the court's conclusion on two grounds. He first raises a purely factual challenge, claiming that the record did not contain enough evidence to show that he even made an allegedly threatening statement against Taylor. But we review this purely factual question about what Mabery said for clear error. *See Roberson*, 2024 WL 2154285, at *3. And the district court's contrary finding was "plausible" given Wilson's testimony. *O'Lear*, 90 F.4th at 536 (citation omitted). She testified that Mabery wanted her to "get in contact with" Taylor to "lure her out" so that Mabery and Lyons could have her "beat up[.]" Wilson Tr., R.235, PageID 2517. The district court found this "testimony credible." Sent. Tr., R.237, PageID 2953. And we must give great deference to this credibility finding under clear-error review. *See United States v. Johnson*, 732

9

F.3d 577, 582 (6th Cir. 2013); *see also Cooper v. Harris*, 581 U.S. 285, 309 (2017). Mabery's mere disagreement with the finding does not allow us to overturn it on appeal.

Mabery next claims that the threat was not believable because he was just conveying "blustery toughness." Appellant's Br. 37. We have yet to decide on the standard of review that should govern whether a statement rose to the objective level required to qualify as a *credible* threat. *See Roberson*, 2024 WL 2154285, at *4. We need not decide this question here either. Even under de novo review, the district court correctly found this threat believable. As the court explained, Mabery had a motive to harm Taylor given his belief that she had "set" him "up" and caused his arrest. Tr., R.237, PageID 2953. Mabery's "prior conviction for assault" made the threat even more serious. *Id.*, PageID 2954. Lyons also contacted Mabery to clear the air about a similar threat, showing that Lyons did not believe that Mabery was engaged in mere bluster. *Id.* Lastly, Mabery's efforts to develop a "plan" to harm Taylor by having Wilson "lure" her out suggested that he truly sought to harm her and was not "blowing off steam[.]" *Id.*, PageID 2955.

We end with one disclaimer. Mabery argued in the district court that his statements could not qualify as a "threat" because he did not intend for them to reach the victim: Taylor. But Mabery did not renew this argument about the nature of a "threat" on appeal. We thus do not consider it.

### 2. Substantive Challenge

Mabery alternatively suggests that the district court imposed a substantively unreasonable sentence. Unlike a procedural objection, this argument does not impugn the way that the district court imposed the sentence. It instead impugns the "bottom-line number"—here, 262 months of imprisonment—on the ground that this number is excessive when measured against the sentencing factors in 18 U.S.C. § 3553(a). *Lynde*, 926 F.3d at 279; *see United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). Yet district courts have broad discretion to choose the appropriate sentence,

so we review this claim for an abuse of discretion. *See Rayyan*, 885 F.3d at 442. And because the district court imposed a sentence within—indeed, at the bottom of—Mabery's guidelines range (262 to 327 months), we presume that the sentence reasonably balanced the § 3553(a) factors. *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc).

Mabery cannot overcome this presumption. The district court recognized his guidelines range as the "starting place" for the proper sentence. Sent. Tr., R.237, PageID 2982; 18 U.S.C. § 3553(a)(4)(A). It added that use of this range helped "avoid unwarranted sentence disparities among" similar defendants. Sent. Tr., R.237, PageID 2983; 18 U.S.C. § 3553(a)(6). The court found the remaining § 3553(a) factors mixed. On one hand, Mabery was "an unrepentant, undeterred defendant" who kept committing drug crimes. Sent. Tr., R.237, PageID 2981; *see* 18 U.S.C. § 3553(a)(1). He had shown "no respect for the law or the courts," and he was a "threat to the public" because he would continue to sell "poison to other people" if released. Sent. Tr., R.237, PageID 2989–90; *see* 18 U.S.C. § 3553(a)(2)(A)–(C). On the other hand, Mabery was a "somewhat sympathetic defendant" because of his personal history, including his "potentially life threatening" medical conditions. Sent. Tr., R.237, PageID 2981, 2991; *see* 18 U.S.C. § 3553(a)(1). Although the court did not find these conditions sufficient to vary below the guidelines range, it relied on them to impose a sentence at the bottom of that range. Sent. Tr., R.237, PageID 2996.

Mabery responds that this sentence is still excessive because of his ill health. Yet we have repeatedly held that a court's refusal to vary from the guidelines range based on health concerns did not render the sentence unreasonable. *See, e.g.*, *United States v. Coffer*, 860 F. App'x 416, 418–19 (6th Cir. 2021) (per curiam); *United States v. Nickerson*, 782 F. App'x 377, 383 (6th Cir. 2019); *United States v. Carpenter*, 359 F. App'x 553, 558 (6th Cir. 2009). This case does not warrant a different outcome. The district court recognized that the Bureau of Prisons offers "good

11

medical care," and Mabery cites nothing to suggest that it could not adequately treat his conditions. Sent. Tr., R.237, PageID 2995; *see Carpenter*, 359 F. App'x at 558.

Mabery next argues that the court's use of the higher base offense level for "pure" methamphetamine created an unwarranted sentence disparity between his sentence and those of defendants who distributed equally harmful drugs like fentanyl. This claim merely repackages his procedural challenge to the guideline's treatment of pure methamphetamine. But our precedent rejects the claim no matter how a defendant frames it. *See Allen*, 93 F.4th at 359–60 (substantive challenge); *Mosley*, 53 F.4th at 965 (same). If anything, Mabery's requested variance itself would engender uniformity concerns as between Mabery and others subject to the higher base offense level. So this variance is more likely to "create" rather than "eliminate" disparities among similarly situated defendants. *United States v. Swafford*, 639 F.3d 265, 270 (6th Cir. 2011).

We affirm.